17255

CAROLINA HOUSING & MORTGAGE CORPORATION, Respondent, v. ARTHUR CARLTON REYNOLDS and GLADYS REYNOLDS, Appellants

(96 S. E. (2d) 485)

*Messrs. Williams & Busbee,* of Aiken, *for Appellants,*

*Messrs. George H. Grant* and *Arthur D. Rich,* of Aiken, *for Respondent,*

January 31, 1957.

STUKES, Chief Justice.

The sole question presented by the appellants in this case is whether the respondent is a holder in due course, without notice, of the negotiable promissory note in suit.

It was given in payment for repairs and improvements to appellants' residence and was payable in monthly installments over a period of thirty-six months, the first of which fell due in April 1953 and was paid by the appellants who, however, defaulted upon the subsequent installments. The note was secured by a mortgage of the property and the action was for judgment upon it and foreclosure of the mortgage, subject to the lien of a prior mortgage. However, the mortgage was held by the lower court to be invalid because of an incompetent witness and there was no appeal. The appeal is from the money judgment upon the indebtedness which was evidenced by the note. It was given to the contractor who sold and endorsed it for value to the respondent before maturity of the first installment.

Respondent's agent inspected the house before respondent purchased the note and mortgage, and reported to it that the repairs and improvements had been completed. Respondent had been furnished with a copy of the construction contract and, apparently out of a superabundance of caution, procured the inspection to be made before advancing its funds for the purchase of the note and mortgage. The inspector testified that he viewed the exterior of the premises and believed, and reported to his principal, that the work had been completed. He was inexperienced in building and had not at that time seen the contract.

The evidence indicated, and the master found, that the work had not been done in a workmanlike manner and that it would cost about $500 to perfect it. He recommended that such amount be offset against the indebtedness and that judgment be rendered for the balance of about $1,200. Upon exceptions to the master's report it was reversed in that particular and the court concluded that respondent was a holder of the negotiable note in due course, free from the defense of failure of consideration; and judgment was entered accordingly.

The appeal is upon the contention that respondent, before purchasing the note, had knowledge of the partial failure of

consideration by reason of the construction contract and its inspection of the building. It is said, in effect, that due care in the latter would have put respondent on notice of the failure of consideration. Appellants undertake to bring themselves within the defense of Sec. 8-845 of the Code of 1952, which follows:

"Absence or failure of consideration is a matter of defense as against any person not a holder in due course and partial failure of consideration is a defense *pro tanto* whether the failure is an ascertained and liquidated amount or otherwise."

However, we agree with the trial court that respondent is a holder in due course and the quoted statute does not apply.

Section 886 of the Code governs. It follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

*Home Bank & Trust Co. v. Davis,* 134 S. C. 508, 133 S. E. 467, construed and applied the above quoted sections of the code to facts which are comparable to those of the instant case. It was held that notice or knowledge of the nature of the consideration of a note does not affect its negotiability, *First National Bank of Richmond, Ind., v. Badham,* 86 S. C. 170, 68 S. E. 536, 138 Am. St. Rep. 1043, and that there was no evidence in that case that the purchaser of the note had cause to suspect that the payee would violate his obligation under the contract in consideration of which the note was given, and, therefore, that failure of consideration was not a defense to the action by the plaintiff holder in due course.

Likewise, in the case at bar respondent had no notice or knowledge of failure of consideration of the note for which it paid value before maturity. With-

out legal duty upon it to do so, it viewed the premises and determined that repairs had been made, which negatives notice or knowledge of any failure of consideration of the note. That it did so possibly without due care violated no legal duty to the makers of the note, simply because no such duty existed. "Ordinarily, knowledge of the consideration for a bill or a note is not notice of a subsequent failure of the consideration, nor is the purchaser bound to inquire as to whether the consideration has failed or will fail." 10 C. J. S., Bills and Notes, § 330(a), p. 829. Moreover, appellants would charge respondent with constructive notice perforce its gratuitous inspection, by reason of its negligence therein; but the statute (Sec. 886) requires actual knowledge, or such knowledge that its taking of the note amounted to bad faith. There is no evidence of that here.

The last cited provision of the code is followed by Sec. 8-887.

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

It was held in *Patterson v. Orangeburg Fertilizer Co.,* 117 S. C. 140; 108 S. E. 401, 402, that, quoting, "Suspicious circumstances * * * are not sufficient to charge the assignee of such commercial paper with notice;" and on petition for rehearing the following was quoted with approval from 8 C. J. 504:

" 'The Negotiable Instruments Law expressly provides that, to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had "actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith." This provision as to bad faith means that suspicion or facts putting a prudent person on inquiry are not

sufficient to preclude one from being a holder in due course, and merely reiterates the common-law rule as laid down in nearly all of the states'." See, also, 10 C. J. S., Bills and Notes, § 324.

The *Patterson case* reaffirmed and followed the authority of *Merchants' Nat. Bank v. Smith,* 110 S. C. 458, 96 S. E. 690, 11 A. L. R. 1274, the opinion in which is replete with citations of earlier cases. Although it resulted differently, *Gray v. Thomas,* 163 S. C. 421, 161 S. E. 743, contains valuable definitions of the meaning of the term "bad faith", as used in Sec. 8-886. It is a lack of fair dealing by which the taker of the instrument obtained an unfair advantage, and is akin to the equitable doctrine of clean hands.

In *Citizens' T. & S. Bank v. Stackhouse,* 91 S. C. 455, 74 S. E. 977, 978, 40 L. R. A. (N. S.), 454, which arose before enactment of the Uniform Negotiable Instrument Law, sections of which have been quoted above, it was said by the court under facts of similarity to those here: "It is to be regretted that the defendants cannot be permitted to prove their defenses, for, according to the allegations of their answer, the note which they are now called upon to pay was obtained from them by fraud and misrepresentation. But it is of vastly more importance to the commerce of the country that the integrity and unassailability of negotiable paper, in the hands of *bona fide* holders for value, shall be maintained by the courts than that persons who carelessly put their names to such paper shall be relieved of liability thereon. * * * This is a doctrine so long and so well established, and so essential to the security of negotiable paper, that it is laid up among the fundamentals of the law, and requires no authority or reasoning to be now brought in its support." The foregoing was approvingly paraphrased in *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Hendrix Mill & Lbr. Co.,* 186 S. C. 268, 195 S. E. 562, after citation of pertinent provisions of the prior-enacted Negotiable Instruments Law. As said in *Patterson v. Orangeburg Fertilizer Co., supra,* the latter did not change in this par-

ticular the established law merchant of this State, which was stated in the following language from 10 C. J. S., Bills and Notes, § 324:

"Mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude a transferee from occupying the position of a holder in due course, unless the circumstances or suspicion are so cogent and obvious that to remain passive would amount to bad faith."

In accord with the last quoted is the following from 8 Am. Jur. 123, 124, Bills and Notes, Sec. 388: "Duty of inquiry as to infirmities in a negotiable instrument or defects in the title of the person negotiating it, which must be exercised by one taking an instrument if he is to take it in good faith, does not arise, according to the prevailing doctrine, from mere knowledge of facts sufficient to put a reasonably prudent man on inquiry; such duty arises only from facts and circumstances which make his taking the instrument without an exercise of such duty an act of bad faith."

Appellants cite 10 C. J. S., Bills and Notes, §§ 324, 330, pp. 821, 831, which we have examined and found nothing in conflict with our decisions which have been cited. On the contrary, support for them is found there, and we have quoted *supra* from that text.

There was no evidence in this case, or facts susceptible of the inference, of bad faith on the part of respondent in its purchase for value before maturity of the negotiable note in suit.

Judgment affirmed.

TAYLOR, OXNER and MOSS, JJ., concur.

LEGGE, J., not participating.