[No. 249-41272-1.   Division One—Panel 1.   December 28, 1970.]

NORTH WESTERN MORTGAGE INVESTORS CORPORATION, *Respondent*, v. BESSIE SLUMKOSKI *et al., Appellants.*

*Casey & Pruzan* and *Phillip T. Hutchison,* for appellants.

*Breskin, Rosenblume & Robbins* and *Arnold B. Robbins,* for respondent.

JAMES, C. J.—This is an appeal from an order denying a motion to set aside a default judgment.

North Western Mortgage Investors Corporation brought the action to foreclose a real estate mortgage given to secure a promissory note.

On May 9, 1967, Bessie Slumkoski and another agreed to purchase a laundromat business from Sandquist. As a part of the transaction, Slumkoski executed and delivered her promissory note to Sandquist. By its terms the note is a negotiable instrument.

As security for the note, Bessie Slumkoski executed and delivered a real estate mortgage to Sandquist. North Western purchased the note and mortgage from Sandquist on May 23, 1967. It is undisputed that Slumkoski is in default.

North Western named James and Rose Rowe as well as Bessie Slumkoski as parties defendant. North Western alleges that the Rowes claim an interest in the real property and that such claimed interest is junior and inferior to its mortgage lien. Neither Slumkoski nor the Rowes appeared, and a default judgment and decree of forfeiture was entered.

The Rowes moved to set aside the default. They allege that their failure to answer was excusable and that they have a meritorious defense.

The allegations (by affidavit) upon which the Rowes rely to demonstrate excusable neglect and to establish a meritorious defense are that:

James and Rose Rowe are the parents of Bessie Slumkoski. Their ages are 69 and 67 respectively. They have fourth-grade educations, no familiarity with legal matters, and are in poor health.

In 1956 the Rowes endeavored to purchase a home but did not have funds for a downpayment. Bessie made a gift of the necessary $500 downpayment. The balance of the purchase price was paid by the Rowes who have continuously lived in the home. Bessie has never lived in the home.

The "legal papers" of this transaction were in Bessie's name, but she delivered them to her parents.

During the May 1967 negotiations, Sandquist asked Bessie if she owned any property. She replied that she did not.

Sandquist then asked her if she "had anything with [her] name on it." Bessie replied that her parents' home was in her name.

Bessie states that at the time the transaction was closed, she asked Sandquist "about all these papers and he said that 'This is just a formality, just a business agreement.' I do remember that I signed a promissory note."

Bessie claims that she was induced to purchase the laundromat by false and fraudulent representations and concealment by Sandquist.

Mrs. Rowe states that "We never gave [Bessie] permission to have any money borrowed against our house and never signed any papers permitting anyone else to borrow against it, and no one ever came to us and told us someone else was trying to borrow money against it." When the foreclosure complaint was served upon the Rowes, Mrs. Rowe took it to Bessie who said she would take care of the matter. Mrs. Rowe did not tell her husband about the complaint because he was suffering from heart disease.

The resolution of civil disputes by enforcement of procedural timetables is not an appealing judicial concept.

The purpose of the courts, whether their judgments be entered by default or after a trial, is always to do justice as nearly as may be, and no technical failure to appear in time, if that failure be not wilful, would justify a court in permitting to stand a judgment which it is satisfied is unjust.

*Jacobsen v. Defiance Lumber Co.*, 142 Wash. 642, 645, 253 P. 1088 (1927).

However, no rational rule would require an exercise in futility. If a defaulted defendant can assert no meritorious defense, no reasonable purpose would be served by setting aside a default judgment no matter how persuasive the plea of mistake, inadvertence, or excusable neglect.

The primary duty of courts in considering motions to set aside default judgments is to inquire whether or not the moving party against the default has a defense on the merits.

*Yeck v. Department of Labor & Indus.*, 27 Wn.2d 92, 97, 176 P.2d 359 (1947).

North Western does not contest the Rowes' plea that their neglect was excusable. It is North Western's position that, even if the facts alleged by the Rowes were true, they do not establish a meritorious defense.

North Western's argument is that (1) it is a holder in due course of the promissory note, a negotiable instrument; (2) it is the owner, without notice of defect, of the mortgage given to secure the note; and (3) the immunities as to defenses incident to the note's negotiability "rub off" upon the mortgage.[1]

■ According to 37 Am. Jur. *Mortgages* § 1241 (1941), the majority rule is that a mortgage securing a negotiable instrument in the hands of a holder in due course "shares the same immunity as to defenses as the note itself, . . ." *See also* 11 Am. Jur. 2d *Bills and Notes* § 34 (1963). In *American Sav. Bank & Trust Co. v. Helgesen*, 64 Wash. 54, 61, 116 P. 837 (1911), *aff'd on rehearing*, 67 Wash. 572, 122 P. 26 (1912), this state embraced the majority rule quoting 1 J. Daniel, A Treatise on the Law of Negotiable Instruments § 834 (5th ed. 1903) as follows:

> [I]f a mortgage is given to secure a negotiable note, and both the mortgage and the note are transferred before maturity to a *bona fide* indorsee, such indorsee takes the benefit of the mortgage as well as of the note, clear of any equities between the original parties. 'It is the debt which gives character to the mortgage, and gives the rights and remedies of the parties under it, and not the mortgage which determines the nature of the debt.' "

and 1 L. Jones, A Treatise on the Law of Mortgages of Real Property § 834 (6th ed. 1904) wherein it is stated that:

> [T]he assignee of a mortgage securing a negotiable note, taking it in good faith before maturity, takes it free from any equities existing between the original parties."

For the purpose of the motion to vacate we must assume

---

[1] *See* Cosway, *Negotiable Instruments—A Comparison of Washington Law and Uniform Commercial Code Article 3,* 38 Wash. L. Rev. 719, 729 (1963).

that: (1) the Rowes were, in fact, the owners of the mortgaged premises; (2) their daughter, Bessie, held a bare legal title in the capacity of a resulting trustee; (3) Bessie's execution of the note was unauthorized by the Rowes, and (4) Bessie's purchase of the laundromat was fraudulently induced by Sandquist.

On the basis of the assumed facts the Rowes argue that, as a matter of law, their occupancy of the home was constructive notice to North Western that they had an interest in the property. The Rowes contend that such constructive notice denies North Western the status of a holder in due course.

■ We do not agree. At the time of North Western's purchase, the transaction was governed by the provisions of the Negotiable Instruments Act.[2] It is true, as the Rowes argue, that to qualify as a "holder in due course" North Western must have taken the mortgage (armed with the immunities of negotiability) without notice of any "defect in the title of the person negotiating it." RCW 62.01.052.

But it was further the requirement of the Negotiable Instruments Act that:

> To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

RCW 62.01.056.

The Rowes do not allege that North Western had *actual* notice of their claimed title to the mortgaged property. However, for some purposes, possession of real property has been held to constitute constructive notice of a claimed interest therein. In *Nichols v. DeBritz*, 178 Wash. 375, 35 P.2d 29 (1934), it is held that actual possession of real property was sufficient to give notice to a mortgagee and to

---

[2]The Negotiable Instruments Act, RCW 62.01, was superseded by the Uniform Commercial Code, RCW 62A, effective June 30, 1967.

subject his mortgage lien to every right of the occupant that a reasonable inquiry would have disclosed.

But RCW 62.01.056 provided that unless there is *actual* notice of a defect in title, a purchaser of a *negotiable* instrument does not lose his status as a holder in due course unless he acts in bad faith on the basis of knowledge which he does have.

The rationale of the statutory rule (which conforms to the earlier common law majority rule to which Washington adhered) is that to hold otherwise would create insuperable impediments to the free exchange of negotiable paper, an indispensable part of modern business. 11 Am. Jur. 2d *Bills and Notes* § 399 (1963); *Jaeger & Branch, Inc. v. Pappas,* 20 Utah 2d 100, 433 P.2d 605 (1967).

The Rowes do not assert that North Western was guilty of bad faith, nor have they alleged any fact which would support such an allegation.

On the other hand, if the vesting of title in their daughter Bessie was not deliberate, it was at best an act of carelessness on the part of the Rowes to permit title to remain in her name. It is an established maxim of equity that where a loss "must fall upon one of two innocent persons, it shall be borne by him who is the occasion of the loss." 11 Am. Jur. 2d *Bills and Notes* § 399 (1963).

> "It is to be regretted that the defendants cannot be permitted to prove their [defense that the note] was obtained from them by fraud and misrepresentation. But it is of vastly more importance to the commerce of the country that the integrity and unassailability of negotiable paper, in the hands of *bona fide* holders for value, shall be maintained by the courts than that persons who carelessly put their names to such paper shall be relieved of liability thereon.

*Carolina Housing & Mortgage Corp. v. Reynolds,* 230 S.C. 491, 496, 96 S.E.2d 485 (1957).

The Rowes have not asserted facts which would consti-

tute a meritorious defense to North Western Mortgage Investors' foreclosure action.

The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.