**JP MORGAN CHASE BANK, N.A., Appellee**

v.

**Francis X. MURRAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 22, 2012.

Filed March 18, 2013.

Francis X. Murray, appellant, pro se.

Brett L. Messinger, Philadelphia, for appellee.

BEFORE: PANELLA, J., LAZARUS, J., and WECHT, J.

OPINION BY WECHT, J.:

Francis X. Murray ("Murray"), *pro se*, appeals the order entered on March 26, 2012. That order granted summary judgment to JP Morgan Chase Bank ("Appellee") in the foreclosure action against Murray to which it allegedly succeeded as substituted plaintiff.[1] The order also awarded Appellee an *in rem* judgment against Murray in the amount of $882,762.59, with interest of $87.77 *per diem* from February 1, 2012, "plus other costs and charges collectively under the [M]ortgage for foreclosure and sale of the mortgaged premises." We reverse.

The original plaintiff that commenced this action on May 6, 2010 was Deutsche Bank National Trust Co. as Trustee for

---

1. JP Morgan Chase Bank, N.A., having been substituted as plaintiff for the originally-captioned plaintiff by leave of the trial court, is identified as "Appellee" herein. JP Morgan Chase Bank, N.A., held itself out as agent for the originally captioned Plaintiff at the outset of this litigation. When we refer to Appellee in that capacity, we refer to it as "JPMorgan."

Washington Mutual Mortgage Securities Corp.2000–1 ("Plaintiff"). The Complaint identified the mortgagee as Great Western Bank d/b/a Sierra Western Mortgage Company. Complaint in Mortgage Foreclosure ("Complaint") at 1 ¶ 1(a). The Complaint alleged that the parties entered into the Mortgage on August 22, 1997. *Id.* at 1 ¶ 1(b). The Mortgage was recorded in Chester County on October 2, 1997. *Id.* at 2 ¶ 1(c).

The Complaint listed a pair of assignments of the Mortgage as follows:

Assignor: Great Western Bank dba Sierra Western Mortgage Company

Assignee: Deutsche Bank National Trust Company Americas

Date of Assignment: August 15, 2000

Recording Date: July 27, 2007

Book: 7223

Page: 955

Assignor: Deutsche Bank National Trust Company Americas

Assignee: Deutsche Bank National Trust Company, as Trustee for Washington Mutual Mortgage Securities Corp.2000–1.

The assignment is in the process of being formalized.

*Id.* at 2 ¶ 1(d) (for sake of convenience, hereinafter we refer to these assignments, respectively, as the "Deutsche Bank Assignment" and the "WaMu Assignment"). Plaintiff identified itself in the alternative as "either the original Mortgagee named in the Mortgage, the legal successor in interest to the original Mortgagee, or … the present holder of the [M]ortgage by virtue of the above-described Assignment(s)." *Id.* at 2 ¶ 2.

The Complaint also averred that "[e]ach Mortgagor named in paragraph 1 executed a note as evidence of the debt secured by the Mortgage (the "Note")," *id.* at 2 ¶ 4, and attached the Note to the Complaint as exhibit B. The Note was executed to the benefit of "Great Western Bank, a Federal Savings Bank [d]oing [b]usiness as Sierra Western Mortgage Company." *Id.* Exh. B. In the form in which it was attached to the Complaint, the Note showed no indorsements, nor was any allonge [2] attached for the purpose of noting any indorsements or assignments.

The Complaint alleged that Murray as mortgagor had defaulted on his obligations under the Mortgage as of September 1, 2009, and remained in default through April 30, 2010. *Id.* at 2 ¶ 7. The Complaint alleged damages in default consisting of installment payments, interest, late charges, escrow advances, and other costs and fees totaling $763,113.02. The Complaint further asserted ongoing interest at a *per diem* rate of $93.68 for each day after April 30, 2010, with additional fees, costs, and expenses collectible under the Mortgage and Note. *Id.* at 3 ¶¶ 8–9.

On June 8, 2010, Murray filed a "Preliminary Objection in the Form of [a] Motion to Dismiss the Complaint" ("PO"). The PO consisted principally of a series of densely convoluted challenges to Plaintiff's standing to pursue the foreclosure action. First, Murray contended that the Deutsche Bank Assignment was "so serious in defect" as to require dismissal of the Complaint. Murray noted that seven years had separated that putative assignment and the recording of same, which was "either negligent or fraudulent or part of a larger effort to conceal the true Holder in Due Course," and consequently was "a defective assignment in both execution in recording." PO at 3 ¶ 2.

**2.** An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 76 (Deluxe 7th ed.).

Second, Murray observed that Plaintiff as named—Deutsche Bank National Trust Co. as Trustee for Washington Mutual Mortgage Securities Corp.2000–1—differed from the mortgagee named in the Complaint, Great Western Bank d/b/a Sierra Western Mortgage Co. *Id.* at 4 ¶ 3. Murray contended that only the original creditor was entitled to bring a foreclosure action. *Id.* at 4 ¶ 4. Moreover, Plaintiff failed to provide any documentation in support of the averred assignments, allegedly in violation of Pennsylvania law and/or an uncited provision of the Federal Debt Collection Act. *Id.*

Third, independently of whether the Deutsche Bank Assignment was effective, Murray contended that the subsequent WaMu Assignment, too, was infirm. Specifically, Murray contended that the party listed as the assignor in the WaMu Assignment was different than the party listed as assignee in the prior Deutsche Bank Assignment. Murray asserted that the party that ostensibly held the Mortgage and Note following the Deutsche Bank Assignment, while a Deutsche Bank entity in name, was not the same Deutsche Bank entity that purportedly assigned the Mortgage and Note in the WaMu Assignment. Thus, alleged Murray, the latter WaMu assignment necessarily was ineffective, failing to convey the Mortgage and Note to which Appellee assertedly succeeded by merger. Consequently, by Murray's lights, Appellee could not have become a holder of the Mortgage and Note, and therefore lacked standing to maintain the action.

Finally, Murray also challenged the verification appended to Plaintiff's Complaint. *See* PO at 10 ¶ 34. Specifically, Murray contended that the signatory to the verification—as, at best, an agent of Plaintiff rather than an appropriately qualified officer of same—was required to assert the signatory's satisfaction of the several criteria enumerated at Pa.R.C.P. 1024(c). The signatory having failed to do so in multiple particulars, Murray contended that the verification (and hence the Complaint) was infirm.

The trial court denied Murray's PO in its entirety by an order entered on September 27, 2010. Therein, the trial court denied Murray's challenge to standing as follows:

> Pursuant to Pa.R.C.P. 2002, all actions shall be prosecuted by and in the name of the real party in interest. A "real party in interest" is the person who has the power to discharge the claim upon which suit is brought and to control the prosecution of the action." *Clark v. Cambria County Bd. Of Assessment Appeals,* 747 A.2d 1242 (Pa.Cmwlth.2000), *appeal denied,* 568 Pa. 740, 798 A.2d 1292 (2002). The Pennsylvania Superior Court has held that Pa.R.C.P. 1147(a)(1) does not require that a party have a recorded assignment as a prerequisite to filing a complaint in mortgage foreclosure. *US Bank, N.A. v. Mallory,* 982 A.2d 986 (Pa.Super.2009).

Order, 9/27/2010 (citations modified).

On October 18, 2010, Murray filed his Verified Answer to Complaint in Mortgage Foreclosure, with New Matter ("Answer & New Matter"). Therein, Murray set forth as affirmative defenses, *inter alia,* the same infirmities he asserted in his PO.

Thereafter, the parties engaged in discovery, following which Appellee filed a motion for summary judgment. Murray filed his response to same. On March 26, 2012, the trial court entered the order complained of herein, granting Appellee's motion for summary judgment and entering the aforesaid judgment *in rem* against Murray. As it had done in denying Murray's PO, the trial court responded to Murray's standing challenge briefly:

All actions shall be prosecuted by and in the name of the real party in interest. Pa.R.C.P. 2002. A real party in interest in any given contract or chose in action is the person who can discharge the duties created and control an action to enforce rights. *McIntyre Sq. Assocs. v. Evans,* 827 A.2d 446, 455 (Pa.Super.2003). Upon review of the record and in particular the original mortgage, the subsequent assignments thereof and the liquidation of the Washington Mutual Mortgage Loan Trust, we find that [Appellee] is the real party in interest.

Order, 3/26/2012, at 1 n. 1 (citations modified). This appeal followed. The trial court directed Murray to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Murray timely complied, and the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a). Therein, the trial court essentially reiterated its prior comments regarding standing.

Murray raises five overlapping issues before this Court.[3] For clarity's sake, we restate Murray's issues as follows:

1. Whether Appellee had standing to continue the instant foreclosure action, or whether genuine issues of material fact remain concerning same, where Appellee failed to substantiate the alleged underlying assignments by which Appellee came to hold the right to pursue this action; the underlying liquidation of Plaintiff was supported only by oral testimony; Appellee failed to establish that it was a holder in due course of the Mortgage and Note, and Appellee failed to meet the substitution requirements of Pa.R.C.P. 2352(a)?

2. Whether the Complaint verification was defective pursuant to Pa.R.C.P. 1024(c), thus precluding summary judgment.

*See* Brief for Murray at 4–5.

We begin with our standard of review of a trial court order granting or denying summary judgment:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact

---

3. While Murray's statement of the questions involved conforms technically with the requirements of Pa.R.A.P. 2116(a) by squeezing the five questions into two densely packed, single-spaced pages, the statement defies the rule's spirit, because it is not "expressed in the terms and circumstances of the case … without unnecessary detail." As well, in violation of Pa.R.A.P. 2119(a), Murray fails to organize his argument into as many sections as there are questions stated. Murray is advised to prepare any future briefs fully in conformity with the requirements of these rules, on peril of waiver. *See* Pa.R.A.P. 2101.

must be resolved against the moving party.

*Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations, internal modifications, and quotation marks omitted).

In connection with his first issue as reformulated above, Murray sets forth a tortuous array of arguments and sub-arguments. At the heart of the matter, however, reside Murray's several challenges to the Mortgage's and Note's putative succession, their present possession or ownership, and with whom, if anyone, resides the right to enforce the Note.

Murray principally argues, based upon the Complaint, Appellee's motion for summary judgment and the exhibits thereto, and information that came to light during discovery, that one cannot trace an unbroken chain of ownership of the Mortgage and Note underlying the instant foreclosure action from the originally named mortgagee to Appellee. It is not only one link in the alleged chain of ownership to which Murray calls our attention, but every link, from the supposed succession by merger of the Deutsche Bank assignor to Plaintiff to the substitution of Appellee as the plaintiff late in this action.

As noted above, the Mortgage identifies the mortgagee as "Great Western Bank, a Federal Savings Bank doing business as Sierra Western Mortgage Company." Complaint, Exh. A at 1. The Mortgage secures the Note, which was executed to the benefit of the same party. Complaint, Exh. B at 1. Thereafter, the Mortgage and Note allegedly passed, following a succession by merger, two subsequent assignments, and yet another succession by merger, to Appellee. Appellee then substituted itself in this action pursuant to Pa.R.C.P. 2352(a).

With regard to Plaintiff's and, now, Appellee's standing, we need not take up all of these contentions. Rather, certain basic principles that appear in various guises in Murray's numerous challenges that have been amply preserved below and in this Court, contribute to simplify the case a great deal. We find that one flaw suffices to create a question of fact regarding Appellee's standing, and we reverse on that basis.

Murray argues essentially that, absent proof of Plaintiff's, and now Appellee's, legal possession of the Mortgage and/or Note, Appellee may not maintain this foreclosure action. As noted above, the trial court disagreed. In its brief discussion of standing, it cited *Mallory, supra,* for the proposition that a foreclosure plaintiff need not prove the assignment as a prerequisite to filing a complaint in foreclosure. Order, 9/27/2010. Later, substantially echoing this aspect of its ruling, the trial court explained that "a real party in interest in any given contract or chose in action is the person who can discharge the duties created and control an action to enforce rights." Order, 3/26/2012, at 1 n. 1. (citing *McIntyre Sq.,* 827 A.2d at 455).[4]

We discern a facial problem with the adequacy of these responses to Murray's objections: The question is not whether

---

**4.** In its Rule 1925 opinion, the trial court rejected Murray's challenge to Appellee's possession of the note as follows: "[A] mortgage foreclosure action is strictly an *in rem* action based on the mortgage." Opinion, 6/12/2012, at 2. In support of this proposition, the court cited Pa.R.C.P. 1141(a) and *Newtown Village Partnership v. Kimmel,* 424 Pa.Super. 53, 621 A.2d 1036 (1993). However, we fail to see how the *in rem* character of the judgment that is entered at the conclusion of a successful foreclosure action speaks to what criteria must be satisfied to establish standing to foreclose for default upon the instrument the mortgage was established to secure. The trial court's brief response does not materially address this aspect of Murray's argument.

Plaintiff was permitted to file the Complaint without tendering proof of assignment, provided that it duly averred possession of the Note, by assignment or otherwise. The question is whether such standing was established such that judgment properly could be entered in Appellee's favor. *Mallory* does not stand for the proposition that a party that avers, but never substantiates, its entitlement to prosecute a foreclosure action due to assignment or succession is entitled to judgment thereupon. Instead, *Mallory* supports only the principle that a plaintiff in foreclosure may rely upon its unsubstantiated averment that it has been assigned the relevant instrument in establishing its *prima facie* case.

In contesting Plaintiff's and Appellee's standing, Murray cites a number of cases that stand for the uncontroversial proposition that, in an action based upon a contract, the complainant, to establish standing, must plead and prove its right to sue under that instrument. *See, e.g., Fourtees Co. v. Sterling Equip. Corp.,* 242 Pa.Super. 199, 363 A.2d 1229 (1976); *Produce Factors Corp. v. Brown,* 197 Pa.Super. 626, 179 A.2d 919 (1962); *Brown v. Esposito,* 157 Pa.Super. 147, 42 A.2d 93 (1945). In *Produce Factors,* for example, we stated the rule as follows:

> When suit is brought against the defendant by a stranger to his contract, he is entitled to proof that the plaintiff is the owner of the claim against him. This protection must be afforded the defendant. Otherwise, the defendant might find himself subjected to the same liability to the original owner of the cause of action, in the event that there was no actual assignment.

179 A.2d at 921 (quoting *Brown,* 42 A.2d at 94). To the same end, in *Fourtees Co.,* we held that a party could not confess judgment under a lease when it failed to establish its interest in the premises. In so ruling, we rejected the party's sole contention in support of its standing that, because he owned and operated the corporation that was the record owner of the premises and lessor, it was the real party in interest under Pa.R.C.P. 2002. 363 A.2d at 1233. "Whatever informal arrangements may have existed between appellee and New Hope, Inc., they did not rise to the level of an enforcible [*sic*] contractual right. Because the record does not establish appellee's claim to be a real party in interest to the lease, the lower court should have stricken the judgment." *Id.* There is no basis that we can discern to read *Mallory* as eliminating this fundamental requirement, whether solely in the context of mortgage actions or otherwise.

That being said, if Pennsylvania's Uniform Commercial Code ("PUCC"), 13 Pa. C.S. §§ 1101, *et seq.,* governs the Note as a "negotiable instrument," *Id.* § 3104, then there is no risk of a debtor twice being held to account for a single debt, which risk was the animating concern behind our decisions in *Fourtees Co., Produce Factors, Brown,* and other cases. Pursuant to the PUCC, a debtor who satisfies his obligations under a negotiable instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question. *Id.* § 3602(a).

Murray repeatedly uses the language of negotiable instruments, challenging Appellee's status as a holder of the Note and Mortgage in this case. We are aware of no Pennsylvania case that has held in clear terms that a note securing a mortgage is a negotiable instrument under the PUCC. However, it appears that most, if not all, other jurisdictions have found that such a note is a negotiable instrument subject to the UCC. *See, e.g., Robbins v. Walker,* 66 UCC Rep.Serv.2d 1048 (S.D.Miss.2008);

*Williams v. Aries Fin'l, LLC*, 70 UCC Rep.Serv.2d 634 (E.D.N.Y.2009); *Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.*, 893 F.Supp. 1304 (D.S.C.1994); *Barnsley v. Empire Mortgage L.P.*, 142 N.H. 721, 720 A.2d 63 (1998); *Ballengee v. N.M. Fed. Sav. & Loan Ass'n*, 109 N.M. 423, 786 P.2d 37 (1990); *Goss v. Trinity Sav. & Loan Ass'n*, 813 P.2d 492 (Okla.1991); *Taylor v. Roeder*, 234 Va. 99, 360 S.E.2d 191 (1987); *Debrunner v. Deutsche Bank Nat. Trust Co.*, 204 Cal.App.4th 433, 138 Cal.Rptr.3d 830 (2012); *First Commerce of Amer., Inc. v. McDonald*, No. CV–95–0075050–S, 1995 WL 592432 (Conn.Super.Ct. Sept. 29, 1995) (unpublished); *Perry v. Fairbanks Capital Corp.*, 888 So.2d 725 (Fl.Dist.App.2004); *First Valley Bank v. First Sav. & Loan Ass'n of Central Indiana*, 412 N.E.2d 1237 (Ind.Ct.App.1980); *Bibler v. Arcata Investments 2, LLC*, 58 UCC Rep.Serv.2d 244 (Mich.App.2005) (unpublished); *Carnegie Bank v. Shalleck*, 256 N.J.Super. 23, 606 A.2d 389 (App.Div.1992); *U.S. Bank, N.A. v. Bennett*, No. 11 MA 40, 2012 WL 2254189 (Ohio Ct.App. June 12, 2012) (unpublished); *N.W. Mortgage Investors Corp. v. Slumkoski*, 3 Wash.App. 971, 478 P.2d 748 (1970). Notably, in *Horbal v. Moxham Nat. Bank*, this Court applied UCC principles to its analysis of a certificate of deposit executed as additional security for a mortgage loan. 441 Pa.Super. 463, 657 A.2d 1261, 1264–65 (1995), *aff'd by evenly divided Court*, 548 Pa. 394, 697 A.2d 577 (1997).

A case decided recently by the United States Bankruptcy Court for the Eastern District of Pennsylvania speaks to the issue in broad terms. In *In re Walker*, 466 B.R. 271 (Bankr.E.D.Pa.2012), the court considered a mortgage and bankruptcy debtor's challenge to a proof of claim filed by the creditor-mortgagee, based upon the premise that there were defects by which the mortgage note was securitized and became an asset of the claimant trust. The note in question was indorsed in blank, *i.e.*,

signed by the President of the named holder of the note at its inception, Allied, a party distinct from the claimant by putative assignment of the note, BNYM. *Id.* at 275–76. The original note undisputedly had been in the possession or control of BNYM since January 6, 2006. *Id.* at 276.

The debtor did not deny her obligation to repay the note. *Id.* at 278. However, she contended that BNYM was not the "true creditor" to whom she was obligated. *Id.* The debtor's argument was "premised on the general, indisputable proposition that for a creditor to have an allowable claim ..., the creditor must have a right to payment. Thus, ... the court [must] disallow a claim to the extent that it is unenforceable against the debtor under any agreement or applicable law...." *Id.* (citations omitted).

Critical to the bankruptcy court's determination that BNYM, as the holder of the note, had the right to submit its claim to the extent it was predicated on that note was the court's determination that the note was a negotiable instrument governed by the PUCC:

> There is abundant legal authority for the proposition that mortgage notes, such as the one involved in this matter, are negotiable instruments governed by article 3 of the UCC. *See, e.g., In re Carmichael*, 448 B.R. 690, 693–94 (Bankr.E.D.Pa. 2011) (collecting cases); *see also In re AppOnline.com, Inc.*, 321 B.R. 614, 621– 24 (E.D.N.Y.2003), *aff'd on other grounds*, 128 Fed.Appx. 171 (2d Cir. 2005) [ (2d Cir.2004) ]; *J.S. Judge & Co. v. Lilley*, 28 Pa. D. & C. 3 (Phila.Mun.Ct.1937).

*Id.* at 282 (citations modified).

The court went on to find that the debtor lacked standing to question the validity of the assignment(s) of the note:

> If a borrower cannot demonstrate potential injury from the enforcement of the

note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue. Here, the element of "injury in fact" is lacking because the Note is a negotiable instrument and BNYM is the holder. As a result, even if the assignment to BNYM were defective and the original assignor retains ownership rights in the Note, any payments the Debtor makes to BNYM will discharge her liability under the Note. *See* 13 Pa.C.S. § 3602(a) (subject to certain exceptions that are not applicable here, "[t]o the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under section 3306 (relating to claims to an instrument) by another person").

Due to 13 Pa.C.S. § 3602(a), the Debtor is in no danger of being subjected to double liability. Even if, as a result of a failure to comply with all of the transfer requirements ..., BNYM lacks the right to retain the economic benefit of the Note, BNYM is the holder and the Debtor cannot be harmed by paying the holder. In short, the Debtor is unaffected by any noncompliance.... Consequently, the Debtor lacks standing to contest the validity of the assignment of the Note to BNYM....

*Id.* at 285–86 (citations modified).

■ Although Murray offers several challenges to the proposition that Appellee is properly a holder of the Mortgage and Note in the instant matter, he does not purport to challenge the status of the Note as an instrument governed by Pennsylvania's version of the UCC, and we are aware of no basis upon which to do so. As explained below, a note secured by a mortgage fits the plain language of the UCC's definition of such an instrument. Instead, Murray's argument in opposition to Appel-

lee's right to enforce the Note, aside from assertions regarding the allegedly defective chain of assignments, resolves into a challenge to the fact that the Note was not indorsed over to Appellee, and that the Note produced during discovery for Murray's inspection, which may or may not have been indorsed in blank by the loose underspecified allonge, was not the original Note.

We agree with the bankruptcy court's view in *Walker*: the Note here is a negotiable instrument governed by the PUCC. Section 3104 of the PUCC offers, in relevant part, the following definition of a negotiable instrument:

Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

(i) an undertaking or power to give, maintain or protect collateral to secure payment;

(ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 Pa.C.S. § 3104. A holder in due course of a negotiable instrument is defined as the holder of an instrument if "the instru-

ment when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity;" and the holder took the instrument for value and in good faith. *Id.* § 3302. The PUCC defines a blank indorsement as follows: "If an indorsement is made by the holder of an instrument and it is not a special indorsement, [⁵] it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id.* § 3205(b). A note is payable to bearer if it

(1) states that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment;

(2) does not state a payee; or

(3) states that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.

13 Pa.C.S. § 3109(a). Further reinforcing the right of a possessor of a note to enforce it, at least one court has held that one need not be a "holder" as defined by the UCC to enforce a note in its possession, notwithstanding doubts regarding how it came to be transferred to the possessor. *See Bank of N.Y. v. Raftogianis,* 418 N.J.Super. 323, 13 A.3d 435 (Ch.Div. 2010).

For these reasons, we conclude that the Note secured by the Mortgage in the instant case is a negotiable instrument under the PUCC. As such, we find Murray's challenges to the chain of possession by which Appellee came to hold the Note immaterial to its enforceability by Appellee. However, this does not end our inquiry, because possession of the Note, the basis upon which Appellee would be entitled to enforce it under the UCC, is in dispute in this case.

Appellee avers that Murray reviewed the original note in the presence of Appellee's counsel, and that the Note provided included an allonge reflecting an indorsement in blank by a duly authorized agent of the original mortgagee, Great Western Bank, a Federal Savings Bank doing business as Sierra Western Mortgage Company. To that end, Appellee furnished a putative copy of the original Note and an allonge as an exhibit to the affidavit of Brett L. Messinger, counsel for the Appellee. Appellee's Opposition to Defendant's Motion for Reconsideration, Exhibit 1 (Note and allonge) to Exhibit B (April 23, 2012 affidavit of Mr. Messinger ("Messinger Affidavit")). Mr. Messinger attested that he provided Murray with "the original collateral file in regard to the Note and Mortgage" relating thereto. Messinger Affidavit at 1 ¶ 2. He further averred that, "[a]t the time of the inspection, there was contained in the original file a number of documents, including the original Mortgage, original Note, and original Allonge to the Note, showing the Note being endorsed in blank by Washington Mutual Bank, F.A., successor in interest to Great Western Bank, a FSB." *Id.* at 1–2 ¶ 3.

Notably, Appellee appears not to have filed of record a copy of the Note that included the allonge until after the trial court's entry of summary judgment, when Appellee filed its opposition to Murray's motion for reconsideration of that order. This is despite the fact that Appellee repeatedly throughout these proceedings attached copies of the Mortgage and Note

---

5. A special indorsement is one made by the holder of an instrument that identifies a person to whom it makes the instrument payable. 13 Pa.C.S. § 3204. Such an indorsement renders the instrument payable to the identified person, who is the only person who may transfer that note by subsequent indorsement.

(in all instances, without any putative allonge) to other filings, including the Complaint itself. Moreover, Appellee attached an earlier Messinger affidavit to its motion for summary judgment, in which Mr. Messinger attested that Murray had inspected the original of the Note and Mortgage. Appellee's Memorandum of Law in Support of Summary Judgment Motion, Exh. E (Messinger affidavit dated January 30, 2012).

Murray in no uncertain terms duly challenged the provenance of the putative Note and Mortgage produced by Mr. Messinger for Murray's review. Murray averred that he was provided three sets of documents, which were presented as the original Mortgage, a copy of the Note, and a "loose" allonge, which Murray described as follows:

> The third set of documents provided me ... includes a document titled "Allonge", which states as follows[:] "Pay the note affixed to this allonge to the order of _____, without recourse." A signature, allegedly of Jess Almanza, Assistant VP, Washington Mutual Bank, F.A., Successor in interest to Great Western Bank, a FSB, appears on the document. There is nothing to suggest this allonge is original, and no date is provided. No payee name appears. There is no notarial seal. This allonge is loose and not attached to any document.

Defendant's Affidavit Re: Document Inspection, filed Dec. 30, 2011, at 2 ¶ 5.

It does not appear that Appellee endeavored to present the original Note to the trial court for inspection. Appellee does not contend that it did so, and the trial court makes no mention of any such action. This leaves us with only the parties' competing averments by affidavit regarding Appellee's possession of the Note, upon which rests its ability to enforce same in the instant proceedings.

■ Pennsylvania courts long have disapproved of trial by affidavit. Moreover, "[t]estimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury." *Rosenberry v. Evans,* 48 A.3d 1255, 1260 (Pa.Super.2012) (quoting *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900, 903 (1989)); *see also Borough of Nanty–Glo v. Amer. Surety Co. of N.Y.,* 309 Pa. 236, 163 A. 523, 524 (1932) (quoting *Reel v. Elder,* 62 Pa. 308 (1869)) ("However clear and indisputable may be the proof when it depends upon oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts"); *Lineberger v. Wyeth,* 894 A.2d 141, 149 (Pa.Super.2006); *Dudley v. USX Corp.,* 414 Pa.Super. 160, 606 A.2d 916, 918–19 (1992).

■ There appears to be no dispute that documents asserted to be the original Note, Mortgage, and allonge indorsed in blank by the original holder were produced for Murray's inspection. However, the parties do dispute two critical issues in this case: First, whether the Note produced was, in fact, the original; and second, whether the loose allonge produced was an original and in fact reflected an indorsement of the Note in question.

Should Appellee successfully establish that it holds the original Note, and that it is indorsed in blank, under the UCC it will be entitled to enforce the Note against Murray, even if there remain questions as to the chain of possession of the Note from the time of its making to its arrival in Appellee's figurative hands. 13 Pa.C.S. § 3109(a). Should Appellee fail to establish possession of the original, or should it fail to establish that the indorsement in blank that refers only generically to an unidentified note in fact is appurtenant to

the Note at issue, then a full examination of the chain of possession may be necessary, as per the requirements of *Produce Factors, supra,* and related cases.[6]

For the foregoing reasons, the trial court erred in entering summary judgment in favor of Appellees. Appellee has failed to establish possession of the original Note, indorsed in blank, and therefore has failed to establish that it or any of its putative predecessor holders of the Note have or had the right to maintain an action in foreclosure upon Murray's alleged default of his obligations under the Note. The parties disagree as to whether the Note produced for Murray's inspection in fact was the original Note, and, if so, whether the loose allonge also provided for Murray's inspection was, itself, an original, and in fact purported to indorse the original Note in blank. This presents a genuine issue of material fact that, absent further discovery sufficient to resolve the conflict as a matter of law (upon whatever basis might apply), must be resolved by a factfinder following the presentation of the available documentary and testimonial evidence. Accordingly, we reverse the trial court's entry of summary judgment in favor of Appellee and remand for further proceedings.[7] We emphasize that our rul-

6. Notably, under the PUCC, it may be the case that Appellee can substantiate possession of the Note by establishing, in the alternative, the transfer of the mortgage, *i.e.,* the security interest in the Note. 13 Pa.C.S. § 3204(c) ("For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest is effective as an unqualified indorsement of the instrument.") It would be premature to address this possibility, given the state of the record.

7. Although the PUCC analysis set forth above may render this question moot on remand, we note that, should circumstances require the trial court to review the validity of the two assignments that preceded Appellee's alleged succession by merger to the Note and Mortgage here at issue, the court must attend to a patent irregularity on the face of the assignments. Despite Appellee's contentions to the contrary in its Complaint and by affidavit of its vice president, Selvin Lokmic, which inaccurately describe the documents in question, Murray is correct that the putative Assignee named in the Deutsche Bank Assignment differs in name from the putative Assignor named in the directly subsequent WaMu Assignment. Specifically, the Assignee named in the Deutsche Bank Assignment is "Deutsche Bank Trust Company Americas." However, the assignor named thereafter in the WaMu Assignment is "Deutsche Bank **National** Trust Company Americas, **as Trustee,**" with the boldfaced words reflecting differences from the listed assignee's name in the Deutsche Bank Assignment. *See* Appellee's Brief in Support of Motion for Summary Judgment, Exh. B (Lokmic Affidavit, Exhs. 4 & 5 (assignments)). Appellee repeats this error before this Court, erroneously characterizing the assignments as follows:

• An assignment dated August 15, 2000 [Deutsche Bank Assignment], which shows an assignment of the Mortgage from Washington Mutual Bank, successor by merger to Great Western, to Deutsche Bank Trust Company Americas....

• An assignment dated March 23, 2010 [WaMu Assignment], which shows an assignment of the Mortgage from Deutsche Bank Trust Company Americas to Deutsche Bank National Trust company, as Trustee for Washington Mutual Mortgage Securities Corp.2000–1....

Brief for Appellee at 11. Appellee omits the word "National" from its description of the Assignor named in the WaMu Assignment. Having admitted that the presence or absence of the word "National" connotes two different corporate entities, it appears that Appellee may not be able to establish the regularity of the WaMu Assignment as documented. Moreover, this erroneous characterization renders Appellee materially silent as to this aspect of Murray's argument.

While it might be contended that this was a typographical error, or that the irregularity is immaterial given that both named entities appear to be Deutsche Bank entities, we cannot, and the trial court should not, overlook the fact that Appellee acknowledged that these are distinct entities in its response to Murray's request for admissions. *See* Defendant's Memorandum of Law in Support of Answer

ing is without prejudice to Appellee's right to seek summary judgment following further development of the record.

As a corollary to our reversal of summary judgment, a question necessarily remains as to whether Appellee properly was permitted to substitute itself as plaintiff-successor in the underlying action pursuant to Pa.R.C.P. 2352(a). A successor is "anyone who by operation of law, election or appointment has succeeded to the interest or office of a party to an action." Pa.R.C.P. 2351. If Appellee were unable to establish its possession of the Note on remand, it would have to establish successor status by other means. Accordingly, in addition to reversing the trial court's order granting Appellee summary judgment, we must vacate the trial court's order permitting Appellee to substitute itself as a party for the alleged predecessor holders of the Mortgage and Note, without prejudice to Appellee to seek Rule 2352(a) substitution thereafter upon due confirmation that Appellee is the party in interest in this action, whether by succession or otherwise.

Given our conclusion that a material issue of fact exists regarding possession of the Note, we need not address Murray's remaining standing-related arguments. As noted above, under the PUCC, these arguments are immaterial if Appellee holds the Note, and they prove too much if Appellee does not hold the Note. This leaves for our consideration only Murray's challenge to the validity of the original verification of the Complaint pursuant to Pa.R.C.P. 1024(c). Although, Murray raised this issue in his PO (at 10 ¶ 33), his Answer and New Matter (at 6 ¶ 6), his Memorandum of Law in Support of [His]

Answer to Plaintiff's Motion for Summary Judgment (at 9–12), and in his concise statement of errors complained of on appeal (at 2, inter alia), the trial court failed to address the issue in any of its orders denying Murray relief.

Rule 1024 provides, in relevant part, as follows:

### Rule 1024. Verification

(a) Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified.

\* \* \*

(c) The verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party.

Pa.R.C.P. 1024.

The Complaint was filed May 26, 2010, in the name of Deutsche Bank National Trust Company (Trustee), also known as Washington Mutual Mortgage Securities Corp.2000–1. Case Summary Report, dated June 12, 2012, at 1. On the civil cover sheet to the Complaint, and **only** there,

---

to Plaintiff's Motion for Summary Judgment, Exh. D ("Admissions Requested") at 7 ¶ 31. We need not cite legal authorities for the self-evident proposition that separately named and established corporate entities, regardless

of their degree of corporate consanguinity, must be treated as such; and that a party that does not possess an instrument in the first instance cannot validly assign that instrument to another party.

Plaintiff's name was supplemented with the words "c/o JPMorgan Chase Bank, National Association." The caption on the Complaint made no reference whatsoever to any JPMorgan entity. The verification appended to the Complaint provided as follows:

> The undersigned is Vice President [stamped] of [JPMorgan] as Trustee for Washington Mutual Mortgage Securities Corp.2000–1 and as such is familiar with the records of said corporation, and being authorized to make this verification on behalf of Plaintiff an officer of the corporation [sic], hereby verifies that the facts set forth in the foregoing Complaint are taken from records maintained by persons supervised by the undersigned who maintain the business records of the Mortgage held by Plaintiff in the ordinary course of business and that those facts are true and correct to the best of the knowledge, information and belief of the undersigned.
>
> [Signed] Barbara Hindman, Vice President, [JPMorgan].

Verification to Complaint, undated.

Murray argues that, because JPMorgan was not a captioned plaintiff to the action, and therefore precluded by Pa.R.C.P. 1018 [8] from acting as such, Ms. Hindman, *qua* a representative of JPMorgan, could verify the Complaint on behalf of Plaintiff only if she certified satisfaction of the requirements of Rule 1024(c). Our review of the language of the verification corroborates Murray's account; Ms. Hindman's vague verification twice uses the phrase "on behalf of." Moreover, neither the Complaint, itself, nor the verification specifically outlines Ms. Hindman's or JPMorgan's relationship to Plaintiff, except to note that JPMorgan "maintain[s] the busi-

ness records of the Mortgage held by Plaintiff in the ordinary course of business."

In support of his argument that the lack of a proper verification precludes the entry of judgment against him, Murray directs this Court's attention to *Monroe Contract Corp. v. Harrison Sq.,* 266 Pa.Super. 549, 405 A.2d 954 (1979), and *Atlantic Credit & Finance v. Giuliana,* 829 A.2d 340 (Pa.Super.2003). In *Monroe Contract,* we confirmed that "any person," including an attorney for a party, may verify on behalf of another party, provided that person does so "only in those cases in which the conditions delineated in Rule 1024 are present." 405 A.2d at 958. In that case, the trial court had rejected an attorney's verification on behalf of its client because the verification averred only that the party lacked sufficient knowledge to make a verification, but did not allege that the party also was without sufficient information to do so. *Id.* We did not dispute the technical validity of the trial court's ruling. However, we ruled "that "[t]o dismiss a petition on such a point ... would be contrary to ... the design of verification," because "[v]erification is necessary to defend a party against spurious allegations; [but] it must not be transformed into an offensive weapon designed to strike down an otherwise valid petition." *Id.* Thus, identifying the technically problematic omission as *de minimis,* we rejected the trial court's overly strict application of the rule. *Id.* Notably, we also held that, "a court confronted by a defective verification should grant leave to amend" before dismissing the incorrectly verified document. *Id.* at 959.

---

**8.** Rule 1018 provides: "Every pleading shall contain a caption setting forth the name of the court, the number of the action and the name of the pleading. The caption of a com-

plaint shall set forth the form of the action and the names of all the parties...." Pa. R.C.P. 1018 ("Caption").

Our ruling in *Giuliana* reinforced the same basic principles, but suggested a case-by-case limitation on the circumstances under which amendment may be permitted. In that case, the verification was signed by "a paralegal of [plaintiff] Atlantic Credit & Finance Inc.," who certified as follows:

[T]he pleading is based on information furnished to counsel, which ... has been gathered by counsel in the course of this lawsuit.... Signer verifies the within pleading is true and correct to the best of the signer's knowledge, information and belief to the extent that the contents of the pleading are that [*sic*] of counsel, verifier has relied upon counsel in taking [*sic*] this verification.

829 A.2d at 344. We emphasized that without a verification "a pleading is mere narration and amounts to nothing." *Id.* (quoting 2 Goodrich Amram 2d § 1024(a):1). Acknowledging that "amendment should be liberally allowed to cure technical defects in a verification," we nevertheless held that the verification in that case "[fell] so far short of the statutory mandate that the verification [was] wholly defective and inadequate" to support entry of judgment in that matter. *Id.*

Before this Court, Appellee does not meaningfully engage Murray's challenge to Plaintiff's verification. It simply avers that Ms. Hindman then was acting on behalf of Plaintiff and that JPMorgan was acting as the "servicer of [Murray's] loan and the agent of the mortgagee." Brief for Appellee at 17.[9] However, there can be no meaningful dispute that the verification at issue, at best, took the form of a verification permissible under Rule 1024(a) if offered by a representative of the plaintiff, itself. However, because that verification expressly was tendered not by an officer of Plaintiff, but by an officer of an alleged non-party entity "on behalf of" Plaintiff, the Complaint could be verified validly by Ms. Hindman only if verified in conformity with Rule 1024(c).

Thus, the verification's omission of all material requirements of Rule 1024(c) not only is deficient, but approaches the level of deficiency identified in *Giuliana* as perhaps not even warranting an opportunity to amend the pleading to correct the error, based upon the fact that no effort whatsoever was made to satisfy Rule 1024(c). However, given the various uncertainties in this case, and even in the presence of such an obvious violation of both the letter and the spirit of Rule 1024, we are loath to deny *ex cathedra* Appellee's opportunity to amend its verification. Thus, on remand the trial court may, in its discretion, furnish any plaintiff deemed proper in this matter the opportunity to offer a new verification under Rule 1024, either by a representative of the duly named plaintiff or by any other person who is qualified to attest to the satisfaction of Rule 1024(c)'s precisely delineated requirements. However, the Complaint must duly be verified if this litigation is to proceed.

For the foregoing reasons, the trial court's March 26, 2012 order granting Ap-

---

9. In light of the questions that this inevitably raises, which might be addressed by discovery regarding Ms. Hindman's relationship to Plaintiff and the controversy, we agree with Murray that Plaintiff's objection to Murray's interrogatory seeking Ms. Hindman's contact information and a description of her role for JPMorgan is problematic, inasmuch as her relationship to JPMorgan, Plaintiff, and the instant controversy plainly bear on her competency to verify the Complaint. *See* Brief for Murray at 29; Plaintiff's Response to Murray's Interrogatories at 8–9, ¶ 26. This may prove to be a moot consideration on remand, depending upon the trial court's consideration of who the proper plaintiff is in this matter, if any, and its determination of how the complaint must be amended if the case is to proceed.

pellee summary judgment must be reversed and the case remanded for further proceedings. We do not rule out the possibility that, upon further discovery or other proceedings, the trial court may find itself in a position in which it is appropriate to rule as a matter of law that Appellee is the actual holder of the Note and, as such, is the appropriate party to maintain the instant action. However, the record presently before this Court is inadequate to justify such a ruling. Should the trial court determine that a fact question remains concerning the proper party in interest to seek to foreclose on the mortgage at issue, it must submit the issue to a factfinder. Moreover, it is incumbent on Appellee, with the guidance of the trial court, to cure the above-identified deficiency in the verification of the Complaint.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.