J-S01005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, N.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FRANCIS X. MURRAY, | : | |
| | : | |
| Appellant | : | No. 615 EDA 2015 |

Appeal from the Order February 4, 2015
in the Court of Common Pleas of Chester County,
Civil Division, No. 2010-05712

BEFORE:  GANTMAN, P.J., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:

**FILED MARCH 08, 2016**

Francis X. Murray ("Murray") appeals from the Order granting summary judgment against him and in favor of JP Morgan Chase Bank., N.A. ("JPM"), in this mortgage foreclosure action.  We affirm.

In a prior appeal, this Court summarized the history of this case as follows:

> The original plaintiff that commenced this action on May 6, 2010[,] was Deutsche Bank National Trust Co.[,] as Trustee for Washington Mutual Mortgage Securities Corp. 2000-1 ("Deutsche Bank").  The Complaint identified the mortgagee as Great Western Bank d/b/a Sierra Western Mortgage Company. Complaint in Mortgage Foreclosure ("Complaint") at 1 ¶1(a). The Complaint alleged that the parties entered into the Mortgage on August 22, 1997.  *Id.* at 1 ¶1(b).  The Mortgage was recorded in Chester County on October 2, 1997.  *Id.* at 2 ¶1(c).
>
> The Complaint listed a pair of assignments of the Mortgage as follows:
>
> Assignor:  Great Western Bank dba Sierra Western Mortgage Company

> Assignee: Deutsche Bank National Trust Company Americas
> Date of Assignment: August 15, 2000
> Recording Date: July 27, 2007
> Book: 7223
> Page: 955
>
> Assignor: Deutsche Bank National Trust Company Americas
> Assignee: [Deutsche Bank]. The assignment is in the process of being formalized.

*Id.* at 2 ¶1(d) (for sake of convenience, hereinafter we refer to these assignments, respectively, as the "Deutsche Bank Assignment" and the "WaMu Assignment"). [Deutsche Bank] identified itself in the alternative as "either the original Mortgagee named in the Mortgage, the legal successor in interest to the original Mortgagee, or . . . the present holder of the [M]ortgage by virtue of the above-described Assignment(s)." *Id.* at 2 ¶2.

The Complaint also averred that "[e]ach Mortgagor named in paragraph 1 executed a note as evidence of the debt secured by the Mortgage (the "Note")," *id.* at 2 ¶4, and attached the Note to the Complaint as [E]xhibit B. The Note was executed to the benefit of "Great Western Bank, a Federal Savings Bank [d]oing [b]usiness as Sierra Western Mortgage Company." *Id.* Exh. B. In the form in which it was attached to the Complaint, the Note showed no indorsements, nor was any allonge[FN] attached for the purpose of noting any indorsements or assignments.

---

[FN] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 76 (Deluxe 7th ed.).

---

The Complaint alleged that Murray as mortgagor had defaulted on his obligations under the Mortgage as of September 1, 2009, and remained in default through April 30, 2010. *Id.* at 2 ¶7. The Complaint alleged damages in default consisting of installment payments, interest, late charges, escrow advances, and other costs and fees totaling $763,113.02. The Complaint further asserted ongoing interest ... with additional fees, costs, and expenses collectible under the Mortgage and Note. *Id.* at 3

¶¶ 8-9.

On June 8, 2010, Murray filed a "Preliminary Objection in the Form of [a] Motion to Dismiss the Complaint" ("PO")….

The trial court denied Murray's PO in its entirety by an order entered on September 27, 2010. Therein, the trial court denied Murray's challenge to standing ….

…

On October 18, 2010, Murray filed his Verified Answer to Complaint in Mortgage Foreclosure, with New Matter ("Answer & New Matter")….

Thereafter, the parties engaged in discovery, following which[, on January 12, 2012,] [JPM] filed a motion for summary judgment. Murray filed his response to same. [On March 8, 2012, JPM filed a Praecipe to substitute itself for Deutsche Bank.] On March 26, 2012, the trial court entered [an] order … granting [JPM's] motion for summary judgment and entering the aforesaid judgment *in rem* against Murray.

*J.P. Morgan Chase Bank. N.A. v. Murray*, 63 A.3d 1258, 1258-60 (Pa. Super. 2013) (footnote in original). Murray filed an appeal of the trial court's grant of summary judgment. That appeal, docketed at number 980 EDA 2012 ("the prior appeal"), was assigned to a three-judge panel of this Court. *See id.*

In the prior appeal, Murray claimed that JPM lacked standing to continue the foreclosure action and that JPM's verification of the Complaint was defective pursuant to Pa.R.C.P. 1024(c). *Murray*, 63 A.3d at 1261. Upon review, the panel reversed the grant of summary judgment in favor of JPM, concluding that

- 3 -

[JPM] has failed to establish possession of the original Note, indorsed in blank, and therefore has failed to establish that it or any of its putative predecessor holders of the Note have or had the right to maintain an action in foreclosure upon Murray's alleged default of his obligations under the Note. The parties disagree as to whether the Note produced for Murray's inspection in fact was the original Note, and, if so, whether the loose allonge also provided for Murray's inspection was, itself, an original, and in fact purported to indorse the original Note in blank. This presents a genuine issue of material fact that, absent further discovery sufficient to resolve the conflict as a matter of law (upon whatever basis might apply), must be resolved by a fact-finder following the presentation of the available documentary and testimonial evidence. Accordingly, we reverse the trial court's entry of summary judgment in favor of [JPM] and remand for further proceedings.

…

[I]in addition to reversing the trial court's order granting [JPM] summary judgment, we must vacate the trial court's order permitting [JPM] to substitute itself as a party for the alleged predecessor holders of the Mortgage and Note, without prejudice to [JPM] to seek Rule 2352(a) substitution thereafter upon due confirmation that [JPM] is the party in interest in this action, whether by succession or otherwise.

*Id.* at 1268-69 (footnote omitted). Regarding Murray's challenge to the verification attached to the Complaint, the panel concluded as follows:

[T]he verification's omission of all material requirements of Rule 1024(c) not only is deficient, but approaches the level of deficiency identified in [**Atlantic Credit & Finance v.**] **Giuliana**[, 829 A.2d 340 (Pa. Super. 2003),] as perhaps not even warranting an opportunity to amend the pleading to correct the error, based upon the fact that no effort whatsoever was made to satisfy Rule 1024(c). However, given the various uncertainties in this case, and even in the presence of such an obvious violation of both the letter and the spirit of Rule 1024, we are loath to deny *ex cathedra* [JPM's] opportunity to amend its verification. Thus, on remand the trial court may, in its discretion, furnish any plaintiff deemed proper in this matter the opportunity to offer a new verification under Rule 1024, either by

> a representative of the duly named plaintiff or by any other person who is qualified to attest to the satisfaction of Rule 1024(c)'s precisely delineated requirements. However, the Complaint must duly be verified if this litigation is to proceed.

*Id.* at 1270. Thus, the panel reversed the Order of the trial court and remanded the matter for further proceedings. *Id.* at 1271.

Upon remand, on June 28, 2013, the original plaintiff, Deutsche Bank petitioned to substitute JPM as the plaintiff. Murray filed an Answer to the Petition. After an evidentiary hearing,[1] the trial court granted Deutsche Bank's Petition, substituting JPM as the plaintiff in the mortgage foreclosure action.

On January 29, 2014, JPM filed a Petition for leave to amend the Complaint ("Petition to Amend") to correct the verification and revise the amounts claimed due and owing by Murray. Murray filed an Answer to the Petition to Amend. On April 29, 2014, the trial court granted the Petition to Amend, after which JPM filed its Amended Complaint and verification.

On October 16, 2014, JPM filed a Motion for Summary Judgment. On February 4, 2015, the trial court granted JPM's Motion, and entered an *in rem* judgment against Murray in the amount of $1,056,222.96, plus interest,

---

[1] In its Opinion, the trial court explained that "[t]he original collateral file was in court for the [evidentiary] hearing, was used by the witnesses during testimony, and was inspected by Murray and his attorney. The original collateral file was identified and admitted as [Exhibit] P-2, but was returned to JPM's attorney at the end of the hearing." Trial Court Opinion, 4/13/15, at 4 n.9. This file included the original Note and Mortgage. *Id.* at 4. The trial court further observed that "[t]he original allonge, indorsed in blank, was stapled to the original Note at the hearing." *Id.* at 4 (footnote omitted).

costs and charges. Thereafter, Murray filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Murray now presents the following issues for our review:

A. Did the trial court follow the Superior Court's instruction to require [JPM] to duly verify its Complaint in conformance to Pa.R.C.P. 1024 before the case could move forward?

B. Because [Deutsche Bank] did not duly verify its Complaint before making its Petition to Substitute, should [Deutsche Bank's] Petition to Substitute have been dismissed because its averments were new, and as such, required [v]erification pursuant to Pa.R.C.P. 206.3?

C. Do the following constitute disputed or established issues of fact which preclude summary judgment: 1) [JPM's] Petition [that] states the captioned plaintiff trust is incorrect; 2) [t]he purported original Note provided for Murray's inspection was not indorsed in blank; 3) [n]o evidence [that] a loose allonge provided for Murray's inspection is [the] original or appurtenant to the purported original Note; 4) [c]ounsel spoliated Note evidence, representing [an] invalid endorsement; 5) [t]he copy of the Note attached to the Complaint …, and[] and three other pleadings, represented in each case to be a true and correct copy of the original, is not indorsed in blank and not identical to the purported original Note presented to the trial court at the hearing … ;] and[] 6) [a] non-party was in possession of the purported original Note on the date of the Complaint? Further, do the following constitute errors of law which preclude summary judgment: [(a) t]he [trial c]ourt found an allonge affixed by [c]ounsel following Murray's inspection (and prior to the evidentiary hearing) constituted a valid indorsement of the Note, making JPM [the] holder of the Note, and [(b) t]he [trial c]ourt found, alternatively, JPM was [a] non[-]holder with the rights of a holder?

Brief for Appellant at 4-5.

Initially, we are cognizant of our scope and standard of review:

- 6 -

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murray*, 63 A.3d at 1261-62 (citation omitted).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 586 (Pa. Super. 2013).

Murray first claims that the trial court, on remand, ignored this Court's directives. Brief for Appellant at 7. Murray asserts that the Superior Court had directed the then-named plaintiff, Deutsche Bank, to correct its deficient verification. *Id.* According to Murray, the trial court improperly entertained JPM's Motion to Substitute, conducting an evidentiary hearing "to determine the rights of a non-party[, JPM,] whose substitution foundation is an alleged

- 7 -

transaction occurring nine months after this action was filed[.]" *Id.* Murray contends JPM's Petition to Substitute should not have been considered prior to Deutsche Bank filing a new verification and, accordingly, the case should have been dismissed. *Id.*

Our review of the record of the prior appeal discloses no such narrow directive from this Court. In fact, the panel expressly anticipated further development of the record, so as to establish the appropriate plaintiff, and to allow the appropriate plaintiff to establish possession of the original Note and the original allonge, indorsed in blank.[2] *Murray*, 63 A.3d at 1268. The panel reversed the Order granting summary judgment, "without prejudice to [JPM]'s right to seek summary judgment following **further development of the record.**" *Id.* (emphasis added). Further, the panel explained that

> a question necessarily remains as to whether [JPM] properly was permitted to substitute itself as plaintiff-successor in the underlying action pursuant to Pa.R.C.P. 2352(a). A successor is "anyone who by operation of law, election or appointment has succeeded to the interest or office of a party to an action." Pa.R.C.P. 2351. If [JPM] were unable to establish its possession of the Note on remand, it would have to establish successor status by other means. Accordingly, in addition to reversing the trial court's order granting [JPM] summary judgment, we must vacate the trial court's order permitting [JPM] to substitute itself as a party for the alleged predecessor holders of the Mortgage and Note, without prejudice to [JPM] to seek Rule 2352(a) substitution thereafter upon due confirmation that [JPM] is the party in interest in this action, whether by succession or otherwise.

---

[2] As this Court concluded in the prior appeal, the Note at issue is a negotiable instrument governed by Pennsylvania's Uniform Commercial Code, 1101-9809 ("PUCC"). *Murray*, 63 A.2d at 1266.

*Id.* at 1268-69 (footnote omitted).

In addressing the sufficiency of Deutsche Bank's verification, the panel again recognized that the appropriate plaintiff must be ascertained on remand:

> [O]n remand the trial court may, in its discretion, furnish **any plaintiff deemed proper in this matter** the opportunity to offer a new verification under Rule 1024, either by a representative of the duly named plaintiff or by any other person who is qualified to attest to the satisfaction of Rule 1024(c)'s precisely delineated requirements. However, the Complaint must duly be verified if this litigation is to proceed.

*Murray*, 63 A.3d at 1271 (emphasis added).

Thus, this Court expressly recognized that on remand, the trial court must ascertain the appropriate plaintiff, and that further proceedings may be necessary to do so. *See id.* The trial court's consideration of the Petition to Substitute in no way violated this Court's directive upon remand. As we discern no error or abuse of discretion by the trial court in this regard, we cannot grant Murray relief on his claim.

Murray next claims that the trial court improperly granted summary judgment where Deutsche Bank's Petition for substitution was "deficiently verified." Brief for Appellant at 23. Murray presents a circular argument in this regard: "Because Deutsche Bank did not duly verify its Complaint before filing its Petition [to Substitute], the averments in its Complaint are mere narration and amount to nothing, making averments in its Petition technically new." *Id.* Murray argues that he preserved this issue by filing

an Answer denying that JPM had the right to pursue substitution or to move the litigation forward. *Id.* at 25.

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. Trial Court Opinion, 4/13/15, at 6-8. We agree with the sound reasoning of the trial court, as expressed in its Opinion, and affirm on this basis with regard to Murray's claim.[3] *See id.*

Finally, Murray challenges the trial court's grant of summary judgment in favor of JPM. Murray claims that the chain of mortgage assignments is "irregular." *See* Brief for Appellant at 32. Murray asserts that the allonge was loose during his inspection of the Note in 2011, *see id.* at 36; there is no evidence that the allonge existed before his December 2011 inspection, *see id.* at 42; the re-stapling of the allonge to the Note by JPM's counsel is spoliation of the evidence, *see id.* at 46; JPM is a non-holder in possession of the Note, *see id.* at 50; the Note in the collateral file is not identical to the Note attached to Deutsche Bank's Complaint, *see id.* at 53-54; and that on the date of Deutsche Bank's Complaint, it did not hold the Note, *see id.* at 56.

---

[3] Our review of the record discloses that Murray did not object to the verification attached to the Petition to Substitute, or raise this issue in his Answer to the Petition. Rather, Murray first raised this specific objection in his Pa.R.A.P. 1925(b) Concise Statement. We therefore discern no error by the trial court in concluding that this issue is waived. *See* Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. Trial Court Opinion, 4/13/15, at 4-6. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis. *See id.* We additionally observe the following.

As this Court previously held, the Note in this case is a negotiable instrument and subject to the PUCC. *Murray*, 63 A.3d at 1265. "The note as a negotiable instrument entitles the holder of the note to enforcement of the obligation." *CitiMortgage, Inc. v. Barbezat*, 2016 PA Super 7, 2016 Pa. Super. LEXIS 8, *9 (citing 13 Pa.C.S.A. §§ 3109(a), 3301).

> Should [JPM] successfully establish that it holds the original Note, and that it is indorsed in blank [or specially indorsed], under the [PUCC] it will be entitled to enforce the Note [as a negotiable instrument] ... even if there remain questions as to the chain of possession of the [n]ote from the time of its making to its arrival in [JPM's] figurative hands.

*Murray*, 63 A.3d at 1268. Therefore, Murray's challenges to the chain of possession and assignments of the Note are immaterial to the Note's enforceability. *Id.* at 1266.

At the evidentiary hearing on the Petition to Substitute, William Rodriguez ("Rodriguez") the lending research officer for JPM, testified regarding the original Note and the allonge. N.T., 10/25/13, at 8. Rodriguez testified that he had inspected the "collateral file," which included the original Note and original Mortgage. *Id.* at 9. The collateral file presented to Murray and examined by the trial court included the original

Note. *Id.* at 12-13. Further, an audit form in the collateral file identified the Note in the collateral file as the original Note. *Id.* at 13.

Rodriguez explained that the contents of the collateral file are scanned, and that the allonge could not be scanned unless detached from the original Note. *Id.* at 14. Rodriguez testified that an allonge in a collateral file belongs with the Note in that file. *Id.*

Rodriguez expressly testified that the allonge at issue "has always been affixed to the [N]ote in different forms [and] in different fashions." *Id.* at 29-30. Rodriguez explained that in all scans, the Note included the allonge. *Id.* at 32. Rodriguez testified, "[a]ll our systems show all copies of the [N]ote are with the allonge. So when they were scanned, they were scanned together…. When [JPM was] in possession of the file, the allonge was affixed according to the scanning of the loan." *Id.*

Murray disputes whether the allonge was always stapled or attached to the Note, but has presented no evidence disputing that the Note and allonge in the collateral file are the original Note and allonge. Further, Murray does not dispute that the allonge in the collateral file is indorsed in blank. Our review discloses no evidence disputing that JPM is the holder of the Note indorsed in blank. *See Murray*, 63 A.3d at 1266-67 (stating that, in a foreclosure action, where a plaintiff establishes that it is the holder of a promissory note, indorsed in blank, it has standing to enforce the note and any accompanying mortgage). As there remained no genuine issue of

material fact, and because the trial court's legal conclusions are sound, we discern no abuse of discretion or error by the trial court in granting summary judgment in favor of JPM.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2016

SENT

APR 1 4 2015

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A. | : IN THE COURT OF COMMON PLEAS |
| Plaintiff | |
| | : CHESTER COUNTY, PENNSYLVANIA |
| v. | |
| | : NO. 2010-05712-CO |
| FRANCIS X. MURRAY | |
| Defendant | : CIVIL ACTION – LAW |

*Attorneys for Plaintiff: Brett L. Messinger, Esq., Arthur R. Armstrong, Esq., Kassia Kialkoff, Esq.*
*Attorney for Defendant: James S. Tupitza, Esq.*

## OPINION

Defendant, Francis X. Murray ("Murray"), appeals from our Order dated February 4, 2015, which granted summary judgment in this mortgage foreclosure action to Plaintiff, JPMorgan Chase Bank, N.A. ("JPM"). This case had been remanded by Superior Court on March 18, 2013.

By way of background, on August 22, 1997, Murray executed a promissory note to Great Western Bank, F.S.B., d/b/a Sierra Western Mortgage Company ("Great Western") in the amount of $868,000 ("the Note").[1] (Exh. P-1)[2] In conjunction with the Note, Murray executed a mortgage in favor of Great Western ("the Mortgage"). (Exh. P-3)

The Note and Mortgage were securitized. On or about March 1, 2000, the Note became an asset in a trust known as the Washington Mutual Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2000-1 as evidenced by a Pooling and Servicing Agreement entered into by Washington Mutual Bank, FA, as seller and servicer. (N.T. 20:3-21:4, 21:20-22:1, 23:2-23:20; Exhs. P-5, P-6) Great Western Bank, Murray's lender, had merged with Washington Mutual Bank.[3] (N.T. 15:15-19)

On August 15, 2000, the Mortgage was assigned by Washington Mutual Bank, successor by merger to Great Western, to Deutsche Bank Trust Company Americas

---

[1] The Note recites that the lender is "GREAT WESTERN BANK, A FEDERAL SAVINGS BANK DOING BUSINESS AS SIERRA WESTERN MORTGAGE COMPANY".

[2] Citation to exhibits and testimony herein refer to the October 25, 2013 evidentiary hearing.

[3] Washington Mutual Bank was formerly known as Washington Mutual Bank, FA.

("the First Assignment").[4] This assignment was recorded on July 27, 2007 in the Chester County Recorder of Deeds Book No. 7223, Page 955, as Document Number 10774737.

JPM purchased Washington Mutual Bank's servicing business on September 25, 2008 and began servicing the Note immediately thereafter. (N.T. 22:19-24:6) JPM received the original Note and Mortgage from Washington Mutual Bank on July 17, 2009. (N.T. 12:19-13:10, 17:24-18:11; Exhs. P-2, P-4)

On and after September 1, 2009, Murray was in default of his payment obligations, having failed from September 1, 2009 to make loan payments when due.

On March 23, 2010, the Mortgage was assigned by Deutsche Bank National Trust Company Americas to Deutsche Bank National Trust Company, as Trustee for Washington Mutual Mortgage Securities Corp. 2000-1 ("the Second Assignment").[5],[6] This Assignment was recorded on May 28, 2010 in the Chester County Recorder of Deeds Book No. 7924, Page 1070, as Document 11015905.

On May 6, 2010, in the interim between the signing and recording of the Second Assignment, Deutsche Bank National Trust Company as Trustee for Washington Mutual Mortgage Securities Corp. 2000-1 ("Plaintiff") commenced this foreclosure action.

On June 8, 2010, Murray preliminarily objected to the Complaint and challenged, *inter alia*, Plaintiff's standing and the verification that Plaintiff had appended to the Complaint. On September 27, 2010, we entered an order overruling Murray's

---

[4] The First Assignment recites that the assignment is from "WASHINGTON MUTUAL BANK, F/K/A WASHINGTON MUTUAL BANK, FA, F/K/A AMERICAN SAVINGS BANK, FA S/B/M TO GREAT WESTERN BANK, D/B/A SIERRA WESTERN MORTGAGE CO." to "DEUTSCHE BANK TRUST COMPANY AMERICAS".

[5] The Second Assignment recites that the assignment is from "Deutsche Bank National Trust Company Americas" to "Deutsche Bank National Trust Company, as Trustee for Washington Mutual Mortgage Securities Corp. 2000-1". After the identification of the assignor, the words "as Trustee", have been written by hand on the page; however, when or by whom this addition was made has not been addressed. We note also the discrepancy between the name of the assignee of the First Assignment, Deutsche Bank Trust Company America, and the name of the assignor of the Second Assignment, Deutsche Bank **National** Trust Company Americas.

[6] It is evident that the trust was improperly designated on the Second Assignment. The correct designation is the "Washington Mutual Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2000-1". (Exhs. P-5, P-6)

2

preliminary objections. On October 18, 2010, Murray answered the Complaint setting forth counterclaims and raising as affirmative defenses, *inter alia*, the same challenges to standing and the verification as he had previously raised in his preliminary objections.

Separate from the ongoing litigation, on February 25, 2011, JPM entered into a Plan of Liquidation related to the Trust and purchased certain assets from the FDIC as receiver for Washington Mutual Bank. Included in these assets was the Note. Therefore, JPM became the owner of the Note on February 25, 2011. (N.T. 24:17-25:23; Exh. P-7) JPM has since remained servicer and owner of the Note. (N.T. 25:24-26:5)

Meanwhile, the parties engaged in discovery. On December 22, 2011, Murray inspected a mortgage file at the office of JPM's attorney.[7] The file contained, *inter alia*, the Note, Mortgage and a loose allonge. (N.T. 57:10-59:5)

On January 30, 2012, JPM moved for summary judgment, which Murray opposed based on, *inter alia*, JPM's standing and failure to properly verify the Complaint.

On March 1, 2012, Murray moved for summary judgment.

On March 8, 2012, JPM filed a praecipe and caused itself to be substituted as plaintiff, asserting its status as owner of the Note.

On March 26, 2012 we entered an order that granted JPM summary judgment, denied Murray summary judgment and entered judgment *in rem* against Murray.

Murray appealed from the March 26, 2012 Order, but did not challenge the judgment entered in regard to his counterclaims, nor did he dispute that he had failed to make payments under the Note and Mortgage. Superior Court restated Murray's issues on appeal as:

1. Whether [JPM] had standing to continue the instant foreclosure action, or whether genuine issues of material fact remain concerning the same, where [JPM] failed to substantiate the alleged underlying assignments by which [JPM] came to hold the right to pursue this action; the underlying liquidation of [Deutsche Bank National Trust Co. as Trustee for Washington Mutual Mortgage Securities Corp. 2000-1] was supported only by oral testimony; [JPM] failed to establish that it was a holder in due course of the Mortgage and Note, and [JPM] failed to meet the substitution requirements of Pa.R.C.P. 2352(a)?

---

[7] Murray's Affidavit filed 12/30/11.

3

2. Whether the Complaint's verification was defective pursuant to Pa.R.C.P. 1024(c), thus precluding summary judgment[?]

Op. p. 7.

Superior Court concluded that summary judgment was improper because genuine issues of material fact remained concerning JPM's standing. Superior Court also found the Complaint's verification to be defective. In an Opinion and Order filed March 18, 2013, Superior Court vacated summary judgment and remanded the case for further proceedings.

On June 28, 2013, Plaintiff petitioned to permit JPM to be substituted as plaintiff as a real party in interest. On July 17, 2013, Murray answered the petition. On October 25, 2013, we held an evidentiary hearing to consider the petition. In ruling on Murray's first appeal, Superior Court had held that the Note is a negotiable instrument governed by the PUCC, 13 Pa. C.S. §3104. Op. 16, 18. Accordingly, the chain of possession by which JPM came to hold the Note is immaterial to JPM's ability to enforce the Note. Op. 18. However, JPM must prove possession of the original Note. Op. 18, 21.

At the evidentiary hearing, William Rodriguez, a home lending research officer with JPM, testified on behalf of JPM. (N.T. 8:16-19) Rodriguez was familiar with the Murray collateral file maintained by JPM. (N.T. 9:4-10:3; Exh. P-2) The collateral file was received by JPM from Washington Mutual Bank on July 17, 2009 and contained original documents, consisting of the Note, the Mortgage, the appraisal of the property, an internal audit form showing when the Note was "prepped, imaged and audited", and a shipping label from Deutsche Bank to Washington Mutual.[8] (N.T. 12:19-13:10, 17:24-18:11; Exhs. P-2, P-4) Murray conceded that the original Note and Mortgage were in JPM's collateral file when shown to him at the hearing.[9] (N.T. 64:12-65:9) Therefore, JPM established that it has had possession of the original Note since July 17, 2009.

Next we considered whether JPM has the right to enforce the Note. Op. 21. To be a 'holder' entitled to enforce the Note under the PUCC, JPM must be able to

---

[8] Allonges are not separately tracked within the collateral file. (N.T. 29:2-8)

[9] The original collateral file was in court for the hearing, was used by the witnesses during testimony, and was inspected by Murray and his attorney. (N.T. 11:16-20, 12:10-15) The original collateral file was identified and admitted as Exh. P-2, but was returned to JPM's attorney at the end of the hearing. (N.T. 12:7-18, 55:13-18, 56:12-13)

4

demonstrate an indorsement of the Note. Op. 21, 13 Pa.C.S. §§1201(b)(21), 3201. At issue is the status of the allonge. If JPM has established that the Note was indorsed in blank, then, under the PUCC, JPM can enforce the Note against Murray. 13 Pa.C.S. §3109(a).

The original allonge, indorsed in blank, was stapled to the original Note at the hearing.[10] (N.T. 14:8-10; Exhs. P-1, P-2) Rodriguez testified that "the allonge has always been affixed to the note in different forms in different fashions." (N.T. 29:23-30:1) Rodriguez explained that in the normal course of handling the Note and allonge internally, the documents are separated to be scanned and then re-stapled. (N.T. 14:2-7, 14:11-14, 14:24-15:2, 41:2-7) This happens multiple times as scans are needed. (N.T. 30:1-4) Rodriguez was certain the allonge was affixed to the Note because scanning records showed the Note and allonge together and because the allonge was stored in the collateral file with the Note. (N.T. 14:15-22, 32:3-18) On June 14, 2011, the collateral file was transferred by JPM from its vault to the office of its attorney. (N.T. 19:17-20:2, 31:7-33:4; Exh. P-4) Murray testified that when he examined the "the mortgage file" at JPM's counsel's office, the allonge was loose and found within some appraisal related papers. (N.T. 57:6-14, 58:18-59:5) The allonge had been re-stapled to the Note sometime prior to the hearing.

We credited Rodriguez's testimony and found that the allonge, indorsed in blank, was affixed to the Note at the time the Note came into JPM's possession and while stored by JPM in its vault. Therefore, JPM established that it is a holder under the

---

[10] The allonge has the following appearance:

ALLONGE

Pay the note affixed to this allonge to the order of

_____, without recourse.

WASHINGTON MUTUAL BANK, FA
Successor in interest to
Great Western Bank, a FSB


_____
[Signature]
Name:    Jess Almanza
Title:     Assistant Vice President

5

PUCC and is entitled to enforce the Note against Murray. Op. 21, citing 13 Pa.C.S. §3109(a). However, given that the Note and allonge were later separated while in counsel's office and not immediately reattached, we have also considered whether JPM may be qualified to enforce regardless of whether or not JPM is a holder, an alternate path suggested by Superior Court. Op. 17.

In In re Walker, 466 B.R. 271 (Bankr. E.D.Pa. 2012), a case cited by Superior Court, the debtor had no right to refuse to pay a note when demand was made by "a nonholder in possession who has the rights of a holder". Id. at 280. In other words, "[a] negotiable note can be transferred without being negotiated. That transfer would be effected by the physical delivery of the note. In that circumstance, the transferee would not be a holder, as that term is used in the UCC. Such a transferee, however, would still have the right to enforce the note." Bank of N.Y. v. Raftogianis, 13 A.3d 435, 439 (N.J.Super.Ct. 2010); Op. 17. "This method of becoming a person with a right to enforce a note arises when a party obtains possession of a note by means of a 'transfer,' rather than a 'negotiation.'" Walker, 466 B.R. at 280, FN19, referencing PUCC §§3203, 3301(2) and In re Veal, 450 B.R. 897, 911 (9th Cir. BAP 2011). "[T]ransfer occurs when the instrument is delivered for the purpose of giving the person receiving the instrument the right to enforce it.'" Raftogianis, 13 A.3d at 440. JPM has demonstrated possession of the original Note and the purpose of delivery, and is therefore entitled to enforce the Note against Murray.

In summary, we concluded that JPM is a 'holder' of the Note and entitled to enforce the same against Murray. However, if the temporary separation of the allonge from the Note is fatal to JPM's claim to be a 'holder' of the Note, then JPM still retains the right to enforce the Note as a non-holder in possession with the rights of a holder. 13 Pa.C.S. § 3301. Accordingly, JPM is a real party in interest and we entered our order on October 25, 2013 permitting JPM to substitute for Plaintiff.

On January 29, 2014, JPM petitioned for leave to amend the Complaint to correct the verification and to revise the amounts claimed due. On February 14, 2014, Murray answered and opposed the amendment. On April 29, 2014, we granted the petition and on May 19, 2014, JPM filed an amended complaint duly verified by a vice president of JPM.

6

On October 16, 2014, JPM filed a motion for summary judgment. On November 13, 2014, Murray answered in opposition. On February 4, 2015, we entered an order granting JPM an *in rem* judgment in the amount of $1,056,222.96, together with interest from September 1, 2014 at the rate of $87.77 per day, plus costs and charges.

On February 26, 2015, Murray filed an appeal from our February 4, 2015 Order. On March 24, 2015, Murray filed a Statement of Errors Complained of on Appeal Pursuant to Pa. R.C.P. 1925(b) claiming that 1.) we erred by holding an evidentiary hearing to determine whether JPM was a proper party in interest without first requiring Plaintiff to verify the Complaint; 2.) the Complaint remains deficient having never been verified and JPM's Petition to Substitute was similarly deficient having not been verified; and 3.) we erred by finding JPM to be a proper party in interest inasmuch as we failed to follow Superior Court's directive to consider whether the Note and allonge provided to Murray for inspection were original documents and whether the allonge indorsed the Note in blank.

> Superior Court directed that:
>
> on remand the trial court may, in its discretion, furnish any plaintiff deemed proper in the matter the opportunity to offer a new verification under Rule 1024, either by a representative of the duly named plaintiff or by any other person who is qualified to attest to the satisfaction of Rule 1024(c)'s precisely delineated requirements. However, the Complaint must be duly verified if this litigation is to proceed. … Should the trial court determine that a fact question remains concerning the proper party in interest to seek to foreclose on the mortgage at issue, it must submit the issue to a fact-finder. Moreover, it is incumbent on [JPM], with the guidance of the trial court, to cure the above-identified deficiency in the verification of the Complaint.

Op. 29-30. Murray seems to read the directive that "the Complaint must be duly verified if this litigation is to proceed" in isolation. Reading that directive in the context of the surrounding paragraph, we understood that we had discretion to determine how best to proceed. It was necessary to identify the proper party in interest as plaintiff before obtaining a verification. The sequence in which Superior Court issued its directive suggests that we first deem a proper plaintiff and then permit that plaintiff to offer a verification. Superior Court warned that the litigation could go no further until those two steps, identification of a proper plaintiff and filing of a verification, had occurred. We

7

could not identify a proper party in interest as plaintiff without conducting an evidentiary hearing. Superior Court seemed to anticipate this necessity, suggesting that if a fact question remained as to the identity of a proper party in interest, it must be submitted to a fact-finder, which is precisely what we did.

Once JPM was identified as the proper party in interest, JPM was substituted as plaintiff and permitted to file an Amended Complaint, which was duly verified. Here, again, Superior Court seemed to anticipate this procedure, observing in a footnote, that the competency of the signatory to the original verification may be moot, "depending upon the trial court's consideration of who the proper plaintiff is in this matter, if any, and its determination of how the complaint must be amended if the case is to proceed." Op. 28-29, FN 9. The original Complaint is no longer operational and its status as verified or unverified is immaterial.

JPM failed to verify the Petition to Substitute; however, Murray failed to bring this deficiency to our attention until he filed his Statement of Matters Complained of on Appeal. Had Murray filed preliminary objections to the petition or otherwise timely raised the deficiency, it could have been addressed and a verification obtained. Errors must be brought to the court's attention expediently so that they can be corrected and any prejudice mitigated. State Farm Mut. Auto. Ins. Co. v. Dill, 108 A.3d 882, 885 (Pa.Super.,2015). Murray has waived this issue, having failed to timely raise it. Furthermore, the determination that JPM was a proper party in interest was made on evidence received at hearing, and was not based on the unverified petition. *Cf.* Atlantic Credit & Finance v. Giuliana, 829 A.2d 340 (Pa.Super. 2003)(error to enter default judgment on unverified complaint).

The final error claimed by Murray appears to go to our failure to address the quality of the Note and allonge inspected by Murray in counsel's office. However, the issue is either whether JPM has possession of the original Note and allonge, if the Note was negotiated, or whether JPM has possession of the original Note, if the Note was

8

transferred but not negotiated.  Based upon the evidence discussed infra, we concluded that JPM has possession of both original documents.

For all of the reasons stated, we entered our order.

BY THE COURT:

DATE: ___4/13/15___

_____
Edward Griffith, J

9