J. S11033/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAMIAN GIANCOLA, DVM, LLC d/b/a WESTERVILLE VETERINARY CLINIC AND DAMIAN GIANCOLA, | : | No. 3078 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered September 13, 2018,
in the Court of Common Pleas of Chester County
Civil Division at No. 2017-11462-CT

BEFORE:  SHOGAN, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 16, 2019**

Damian Giancola, DVM, LLC, d/b/a Westerville Veterinary Clinic, and Damian Giancola appeal from the September 13, 2018 judgment entered in favor of De Lage Landen Financial Services, Inc. (hereinafter, "DLL") in the amount of $54,871.78, following the trial court's September 6, 2018 order granting DLL's motion for summary judgment.[1]  After careful review, we affirm.

---

[1] Appellants purport to appeal directly from the September 6, 2018 order granting summary judgment in favor of DLL, but the appeal properly lies from the entry of judgment.  The record reflects that judgment was entered on the docket on September 13, 2018, and thus, we have amended the caption accordingly.

This matter involved a dispute over a lease agreement for veterinary diagnostics equipment. The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows: Damian Giancola is an authorized agent of Damian Giancola, DVM, LLC, which does business as Westerville Veterinary Clinic in Westerville, OH (collectively, "appellants"). DLL is a finance company that, among other things, provides financing to businesses for the leasing of commercial equipment. IDEXX, who was not a party to the underlying action, is a company engaged in the development and manufacture of diagnostic equipment routinely used in veterinary practice to determine chemistry, hematology, endocrinology, urinalysis, and other test results. On May 21, 2015, appellants entered into a diagnostic agreement with IDEXX to lease veterinary diagnostic equipment that IDEXX manufactured. (**See** "IDEXX Diagnostic Agreement," 5/21/15, attached as Exhibit A to "[Appellants'] Brief in Opposition to [DLL's] Motion for Summary Judgment," 8/20/18.) As part of this agreement, IDEXX agreed to award appellants one reward "point" for each diagnostic profile performed using the leased IDEXX equipment, equal to $1, with all amounts being credited toward appellants' monthly lease payment. (***Id.*** at ¶¶ 2-3.) To finance the lease of this equipment, appellants entered into a 72-month equipment lease agreement with DLL that commenced on June 30, 2015. (**See** Equipment Lease Agreement, 5/21/15, attached as Exhibit A to Complaint, 12/7/17.) Contemporaneous with the execution of this lease agreement, appellant

Damian Giancola executed a personal guaranty, wherein he unconditionally guaranteed payment to DLL of any amount due under the lease. From March 2017 until December 2017, appellants failed to make monthly payments to DLL.

On December 7, 2017, DLL filed a complaint against appellants for breach of contract, breach of guarantor, and **quantum meruit**, alleging that appellants were in default and that $54,871.78 was due under the terms of the lease agreement and guaranty. (**See** Complaint, 12/7/17 at ¶¶ 13-18.) On February 19, 2018, appellants filed an answer and new matter, alleging, **inter alia**, that "DLL financial solutions partner (aka IDEXX), the company who handles the monthly lease payments, made accounting errors on the amounts owed by [appellants] to [DLL] and upon information and belief will provide the parties with an accurate, updated invoice." (**See** "[Appellants'] Answer to Complaint with New Matter," 2/19/18 at ¶ 9.) DLL filed its reply to appellants' answer and new matter on March 7, 2018. Discovery requests were exchanged to which each party responded. Thereafter, on July 6, 2018, DLL filed its motion for summary judgment. Appellants were granted an extension and filed a timely response to DLL's motion for summary judgment on August 20, 2018. As noted, the trial court entered an order on September 6, 2018 granting DLL's motion for summary judgment. On September 13, 2018, the trial court entered judgment in favor of DLL in the amount of $54,871.78. In reaching this decision, the trial court reasoned that,

> [DLL] has provided a copy of [appellants'] payment history as support for its Motion. [Appellants] have provided no evidence to counter that payment history except an assertion that there were "problems" with the application of the IDEXX points. **This assertion is based on a single invoice which [appellants] were told to ignore because it was sent in error.** With regard to the amount claimed for attorney's fees, that amount is based on the agreement between [DLL] and its counsel. Finally, a review of [appellants'] Answer and New Matter reveals that with the exception of a denial of the amount due, no valid defense was asserted.

Trial court order, 9/6/18 at ¶ 1 n.1 (emphasis added).

On October 5, 2018, appellants filed a timely notice of appeal. Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellants raise the following issues for our review:

> I. Did the [trial] court commit an abuse of discretion or error of law in concluding that summary judgment was proper while discovery was ongoing and not all necessary parties joined?
>
> II. Did the [trial] court commit an abuse of discretion or error of law in concluding that there were no issues of material fact in dispute?
>
> III. Did the [trial] court commit an abuse of discretion or error of law in concluding [appellants] provided no evidence to counter the payment history provided by [DLL]?

Appellants' brief at 6.[2]

---

[2] We note that Issue III was not raised in appellants' Rule 1925(b) statement. However, as this claim is intrinsically intertwined with that raised in Issue II, we decline to find wavier and elect to address these issues concurrently.

Our standard of review of a trial court's order granting summary judgment is well settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***JP Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258, 1261-1262 (Pa.Super. 2013) (citations and internal quotation marks omitted); ***see also*** Pa.R.C.P. 1035.2.

Appellants first argue that the parties were not given a reasonable opportunity to complete discovery and that the order granting DLL's motion for summary judgment was premature because "discovery was ongoing and not all necessary parties were joined." (Appellants' brief at 11.) The record belies this contention.

In Pennsylvania, "parties must be given reasonable time to complete discovery before a trial court entertains any motion for summary judgment[.]" *Reeves v. Middletown Athletic Assoc.*, 866 A.2d 1115, 1124 (Pa.Super. 2004) (citation omitted).  Pennsylvania Rule of Civil Procedure 1035.2 governs motions for summary judgment and provides, in relevant part, as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1)  whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense **which could be established by additional discovery or expert report**, or
>
> (2)  if, **after the completion of discovery** relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2 (emphasis added).

This court has unequivocally stated that the purpose of Rule 1035.2 "is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed." *Burger v. Owens Illinois*, 966 A.2d 611, 618 (Pa.Super. 2009) (citation omitted).  "The adverse party must be given adequate time to

develop the case and the motion [for summary judgment] will be premature if filed before the adverse party has completed discovery relevant to the motion." ***Id.***

Here, our review of the record supports the trial court's determination that no further discovery was necessary or ongoing at the time it entered its September 6, 2018 order granting summary judgment in favor of DLL. (Trial court order, 9/6/18 at n.1; ***see also*** trial court opinion, 11/27/18 at 2-3.) The record reflects that nearly five months elapsed between the date appellants filed their answer and new matter to DLL's complaint (February 19, 2018) and the date DLL filed its motion for summary judgment (July 6, 2018). During this time-period, DLL timely responded to all of appellants' discovery requests and appellant did not file any motions or send any correspondence to DLL suggesting that the discovery was deficient or that additional responses were needed.

The record further reflects that appellants failed to amend their answer and new matter to include a claim against IDEXX nor attempted to file a third party or joinder complaint against IDEXX. Appellants also failed to serve a subpoena on IDEXX or otherwise request any additional discovery of which IDEXX might have in its possession. Appellants now contend, after the fact, that DLL's subsequent responses on June 28, 2018 were "unsatisfactory" (***see*** appellants' brief at 10, 14-15), but fail to explain why they believe DLL would be in possession of additional documents pertaining to the "IDEXX Diagnostic

Agreement," **to which DLL is not a party**. As discussed more fully below, appellants' contention that it has a viable claim against IDEXX with respect to its application of award points under the "IDEXX Diagnostic Agreement" has no bearing on its liability to DLL under the terms of the equipment lease agreement and personal guaranty. Accordingly, appellants' first claim of trial court error must fail.

Appellants next argue that the trial court abused its discretion in concluding that there existed no genuine issues of material fact with respect to appellants' liability under the equipment lease agreement. (Appellants' brief at 15.) Appellants contend that at the time the trial court entered an order granting summary judgment in favor of DLL, there existed two primary unresolved issues of material fact: (a) whether IDEXX properly applied the award points to appellants' account; and consequently, (b) what was the proper amount appellants owed to DLL under the terms of the lease. (*Id.* at 16-18.) Appellants further contend that the trial court "committed an abuse of discretion or error of law in concluding [appellants] provided no evidence to counter the payment history provided by [DLL]." (*Id.* at 19.) We disagree.

"Pennsylvania has adopted the [Uniform Commercial Code (UCC)] to, *inter alia*, "simplify, clarify and modernize the law governing commercial transactions." *De Lage Landen Fin. Servs., Inc. v. Rozentsvit*, 939 A.2d 915, 919 (Pa.Super. 2007) (citation omitted). Here, the record reflects that the May 21, 2015 Equipment Lease Agreement appellants entered into with

DLL expressly invoked Article 2A of the Pennsylvania UCC and provided that the lease agreement constituted a finance lease as defined by statute. (***See*** Equipment Lease Agreement, 5/21/15 at § 8; ***see also*** 13 Pa.C.S.A. § 2A103(a).) Pursuant to Section 2A407, in this type of lease "the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods." 13 Pa.C.S.A. § 2A407(a). Section 2A407 further states that the lease agreement "is not subject to cancellations, termination, modification, repudiation, excuse or substitution without the consent of the party to whom the promise runs." ***Id.*** at § 2A407(b).

Instantly, the lease agreement contained the following provision, commonly referred to in the lease finance industry as a "hell-or-high water" clause:[3]

> Your Lease obligations are absolute, unconditional and are not subject to cancellation, reduction, right-of-recoupment, setoff or counterclaim.

Equipment Lease Agreement, 5/21/15 at § 1, ¶ 3.

Upon review of the record in the light most favorable to appellants, the non-moving party, we find that the trial court did not abuse its discretion in

---

[3] A "hell-or-high-water" clause is defined as a clause "requiring the lessee to continue to make full rent [or lease] payments to the lessor even if the thing leased is unsuitable, defective, or destroyed." ***Black's Law Dictionary*** 729 (7th ed. 1999). This court has upheld a "hell-or-high-water" lease provision in a suit to recover payments due under a lease. ***See U.S. Leasing Corp. v. Stephenson Equip., Inc.***, 326 A.2d 472, 473 (Pa.Super. 1974).

concluding that there existed no genuine issues of material fact in this case. The record reflects that appellants do not dispute entering into the equipment lease agreement with DLL, accepting and using the leased IDEXX equipment, or failing to make timely payments to DLL under the terms of the agreement. Any grievances appellants have with regard to the miscalculation of the award points credited toward its monthly lease payment, pursuant to the separate diagnostic agreement they entered into with IDEXX, does not constitute a valid defense to the their unconditional obligation to make payments to DLL pursuant to the lease agreement and personal guaranty. Contrary to appellants' contention, the record further supports the trial court's determination that "with the exception of [invoice number 56840542, which was sent in error and later corrected], [appellants] point to no other 'accounting errors' and have provided no evidence to counter [DLL's] payment history." (Trial court opinion, 11/27/18 at 2; *see also* Letter from DLL, 11/22/17, *attached as* Exhibit D to "[Appellants'] Brief in Opposition to [DLL's] Motion for Summary Judgment," 8/20/18.) Accordingly, we discern no abuse of discretion on the part of the trial court in granting DLL's motion for summary judgment in this matter. Therefore, we affirm the trial court's September 13, 2018 judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/16/19</u>